[No. 38570.    Department Two.    April 6, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT EUGENE HOPKINS, *Appellant*.*

*Reported in 426 P.2d 496.

*Moschetto & Alfieri* and *Joseph A. Moschetto,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *David W. Soukup,* for respondent.

DONWORTH, J—This appeal is from a conviction by a jury of the crime of manslaughter and the judgment and sentence entered thereon. The incident upon which the charge was based occurred on or about May 12, 1965, while appellant was serving a 90-day sentence in the King County jail in Seattle following his conviction of renting a car under false and fraudulent representation and also of driving without a valid operator's license.

Because appellant was a victim of epilepsy and subject to frequent seizures, he had been assigned to the hospital ward. Another inmate, a trusty named Billy Burmeister, was assigned to assist appellant whenever he might have a seizure. Burmeister was described by two of the witnesses as "belligerent."

About 4 p.m. on the afternoon of May 12, 1965, four of the inmates of this hospital ward, appellant, Edward Kitch, Robert Fulfer, and Leland Wade were playing cards at a table in the ward. Burmeister came into the room, provocative words passed between him and appellant, and they engaged in a brief altercation which resulted in injuries to Burmeister which the state contends were the cause of his death.

While some of the testimony concerning the fight is in dispute, it appears that Burmeister grabbed appellant's arms and held him. Appellant then broke loose, and Burmeister struck him, knocking his glasses off. Appellant then struck Burmeister with his fists several times.

The fight then seemed to stop for a moment. Edward Kitch, who testified that he had turned his back and ducked

down to protect himself, turned to look at Burmeister at this point. He noted that Burmeister was standing up with one arm at his side, hanging onto a bed with the other hand. Kitch testified that Burmeister was bleeding from the nose and that he called to appellant to stop and then "turned back around." He testified that then

> The next thing I heard was a crack like a coconut, and I turned around, and there was Burmeister laying up in the corner where the beds are all joined up in the far upper left hand corner. . . . He was laying on the floor bleeding and screaming that his head hurt.

Jim Dupuis, another hospital trusty, then came into the room. He ordered appellant to stand back, attempted to stop Burmeister's bleeding, and called for an ambulance. Burmeister was taken to the King County (Harborview) hospital.

Later that evening, at about 10 o'clock, Burmeister was returned to the hospital ward of the jail. Dupuis testified that nothing had been done for Burmeister at the hospital except to stop the bleeding. He had regained consciousness and was apparently rational at that time.

His condition worsened, however, and he was again sent to the county hospital at about 12:30 a.m., May 13, 1965. Some three hours later he was returned for a second time to the hospital ward of the jail, with a notation from the county hospital that admission was not necessary. His condition was diagnosed as a concussion.

Dr. Grinstein, the county jail physician, testified that he first saw Burmeister in the hospital ward of the jail on May 13th. At that time, Burmeister had presented numerous lacerations and contusions of the face, particularly the bridge of the nose, discoloration of the left eye, and a laceration at the back of the head.

Burmeister remained in the hospital ward from about 3:30 a.m. on May 13th until about 7:05 a.m. on May 15th, when his condition became so critical that he was once again returned to King County hospital, where he died that evening.

Dr. Eggers of the King County coroner's office, who was present at the autopsy, testified that Burmeister suffered a fractured skull on the left side of his head, a subdural hemorrhage on the right anterior side with contra coup subdural hemorrhaging toward the back of the head. In his opinion, these injuries resulted in his death. Dr. Eggers testified that a severe blow would be required to cause such injuries.

Appellant's first assignment of error is based on the trial court's continued efforts to compel state's witnesses Leland Wade and Joseph Lains to testify after their repeated refusals to do so on the ground of self-incrimination. Since the conduct of both witnesses was similar, and appellant's objection to the procedure followed in each instance is identical, in the interest of brevity we shall discuss only the examination of Wade.

Wade, who had been a witness to the fight that resulted in the death of Burmeister and had given a statement regarding the fight to Officer Huso of the King County sheriff's office, and had testified fully with regard thereto at the coroner's inquest (in the presence of appellant and his counsel), was called to the witness stand by the state. He answered a number of preliminary questions, but, when questioned about the fight itself he either refused to answer on the ground of self-incrimination or claimed that he did not remember.

Wade's refusals to answer several questions were based, according to him, on the invocation of his privilege against self-incrimination. The court made it clear to the witness that no answer he could give to the questions could possibly incriminate him and directed him to answer. However, the witness still refused to answer. Thereupon, the state claimed surprise at the refusal of the witness to testify, and the court granted the prosecutor permission to cross-examine the witness. On cross-examination by the state, the witness continued to claim his Fifth-Amendment privilege and still persisted in his refusal to answer when ordered by the court to do so. (After the trial, both Wade and Lains were punished for contempt of court.)

14

■ Conceding that an adverse inference (factual, not legal) does arise from a refusal to answer, the question presented when the claim of privilege is made by a witness other than the accused, is whether such inference is prejudicial to the accused or is incriminating only as to the witness.

The answer depends upon whether the refusal is *logically usable as an incriminating fact against the defendant.* In the present case, that question must be answered in the negative.

The two witnesses produced by the state were not accomplices of appellant. Their only connection with the crime charged was that they had witnessed the fight. Under these circumstances, we are unable to see how their claim of the privilege against self-incrimination could logically have been harmful to appellant. This being the case, appellant's first assignment of error is without merit.

The second assignment of error is based on the trial court's refusal to grant a mistrial upon motion by appellant, made on the ground that statements of the witnesses Wade and Lains, to the effect that their lives would be jeopardized if they testified, prejudiced the jury against appellant.

■ The statement by Wade, made in response to a question concerning the statement given by him to an officer of the King County sheriff's office, was that:

> I would like to answer that by telling the jury that anything I say against him in this case, referring to this fight, is endangering my life when I go to one of the institutions, and therefore I have to refuse to answer any questions referring to this fight.

The possible harmful effect of this statement, however, was dispelled by the subsequent cross-examination of the witness by counsel for appellant, as follows:

> Q. You stated earlier, Mr. Wade, to the jury, that you were fearful of your life. Is that because you are afraid of Mr. Hopkins? A. No. Q. Is it because of some other fear? A. That is right. Q. Has Mr. Hopkins made any threats to you, sir? A. No. Q. Has Mr. Hopkins in any

way tried to get you to change your testimony? A. No. Q. Let me ask one final question, Mr. Wade. Did either Mr. Moschetto or myself attempt to influence your testimony? A. No.

Accordingly, we hold that appellant was not prejudiced by the above-quoted statement of the witness.

■ Error is further assigned to the trial court's refusal to give appellant's proposed instruction on the establishing of the corpus delicti and the proximate cause. We find, however, that the substance of this proposed instruction was fully covered by the court's instruction No. 7. Refusal to give a requested instruction is not error when the subject matter is adequately covered in other instructions. *State v. Holbrook,* 66 Wn.2d 278, 401 P.2d 971 (1965). Appellant's third assignment of error is without merit.

■ Appellant contends that the court's instruction No. 15 constitutes a comment on the evidence and assigns error to the giving of that instruction. The instruction informed the jury that:

You are instructed that no man can by his own lawless acts create a necessity for acting in self-defense and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self-defense. Self-defense is the plea of necessity as shield only to those who are without fault in occasioning an affray, and acting under it. *Therefore, if you find* from the evidence beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the affray, then the plea of self-defense is not available to him. (Italics ours.)

Were it not for the last sentence of the instruction, there would be a serious question whether the giving thereof was erroneous. With the inclusion of the last sentence, we hold that it is not prejudicially erroneous.

We note that this court has, on two previous occasions, held that the giving of this same instruction did not constitute reversible error. *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963); *State v. Turpin,* 158 Wash. 103, 290 Pac. 824 (1930).

Appellant also assigns error to the trial court's instruction No. 17, in that it did not include appellant's proposed addition thereto. The proposed addition would have told the jury that:

However, malpractice resulting in new and different injuries which prove fatal would be a defense.

■ While the statement is correct, it finds no support in the evidence presented in this case. An instruction not warranted by the evidence need not be given. *State v. Rio*, 38 Wn.2d 446, 230 P.2d 308 (1951). The assignment is without merit.

Finally, appellant contends that misconduct of the deputy prosecutor occurred, amounting to prejudicial error, when he attempted to impeach his own witness, on the basis of surprise, by reading into the record highly prejudicial remarks of Wade purportedly made by him to Officer Huso of the King County sheriff's office while he was confined in the county jail.

■ Without passing on the propriety of the use of the purported statements of Wade by the prosecutor under the circumstances of this case, we do not find reversible error, in view of the extensive use by appellant of the prior testimony of Wade, given by him at the coroner's inquest. In substance, the statement given to Officer Huso by Wade and Wade's testimony at the coroner's inquest were the same. By reading into the record, merely in a different form, substantially the same matter to which he objected, appellant waived his objection thereto.

The judgment of the trial court is affirmed.

FINLEY, C. J., ROSELLINI and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.

June 8, 1967. Petition for rehearing denied.