[Crim. No. 5229. Fourth Dist., Div. One. Feb. 7, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD BRUCE FURMAN, Defendant and Appellant.

## COUNSEL

Sheela, Lightner, Hughes & Castro and Howard J. Bechefsky for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Elaine A. Alexander, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J. —**

### LINK'S LINK WITH DESTINY, A SHORT TALE

After his motion to suppress evidence under Penal Code section 1538.5 was denied, defendant Ronald Furman pleaded guilty to possessing marijuana for sale (Health & Saf. Code, § 11530.5). He appeals the judgment (order granting probation), contending officers did not have probable cause to search his luggage at the San Diego International Airport.

At 3 p.m. on January 13, 1972, Budd Johnson, a deputy United States Marshal, called Charles McLaughlin, an agent for the California Bureau of Narcotic Enforcement, and told him an informant, known to both men, had said a certain person "might possibly" be in possession of narcotics that night at the San Diego International Airport. The informant said "a white male adult, approximately 25 years of age, six foot tall weighing approxi-

mately 160 pounds who had long brown hair and wearing blue jeans and a gray-green T-shirt would be departing on United Airlines flight 900 leaving San Diego at 12:35 [a.m.] on January [14th] for Portland, Maine, and would be in possession of two suitcases, one large brown suitcase and possibly one small brown suitcase." The informant had given Agent McLaughlin information during the preceding two years which had led to at least 15 narcotics arrests and convictions.

McLaughlin called United States Customs to have someone come to the airport with a dog trained to detect marijuana odors.

About 11 p.m. McLaughlin went to the airport and stationed himself near the United Airlines check-in counter to await the arrival of the described person.

At 11:45 p.m. McLaughlin saw someone who exactly fitted the description given by the informant enter the terminal and walk directly to the United Airlines ticket counter. The person was carrying a large brown suitcase and a smaller brown suitcase. In court McLaughlin identified Furman as the person who went to the ticket counter. McLaughlin saw a ticket exchange transaction, then Furman placed the large brown suitcase in the area where it is taken by the airline clerk. The clerk gave Furman a baggage stub receipt for the large suitcase, and Furman walked in the direction of the boarding area, carrying the smaller brown suitcase. McLaughlin went to the ticket agent and learned Furman had exchanged a ticket to Portland, Maine, for one to Bangor, Maine.

Wayne Steidley, a United States Customs officer, arrived at the airport shortly before midnight with Link, a dog he had trained to detect marijuana.

Link had been trained by Officer Steidley at a special school in San Antonio, Texas, to scratch, bite or bark at objects emitting the odor of marijuana. To "graduate" to a field dog, which he did, Link had to achieve a test accuracy score of 90 percent or better out of 100 problems. As far as Officer Steidley knew Link had made only two mistakes in his marijuana-sniffing career, and to the best of Officer Steidley's knowledge Link had never mistakenly reacted to objects which did not contain marijuana or hashish. In the previous year Link's prowess in marijuana detection had led to about 100 arrests.

Upon direction Steidley took Link to the United Airlines baggage room where Furman's large suitcase had been placed. Furman's suitcase was standing on the floor near other baggage to be taken out to the airplane. The suitcase had not been pointed out to Steidley before he gave Link access to

the baggage. Link reacted to appellant's suitcase by barking, biting and scratching, as he had been trained to react to marijuana.

This news was passed on to McLaughlin who intercepted Furman as he was about to board his flight. McLaughlin identified himself, showed his badge, asked Furman his identity, told him he was suspected of transporting marijuana, and asked him to go with him to the baggage room. When they reached the baggage room Link was scratching and barking at the large brown suitcase. After Furman placed the small brown suitcase on the floor, Link began barking, scratching and chewing it. Furman refused to open the bags. McLaughlin opened the small suitcase, found 16 marijuana kilo bricks and arrested Furman for possessing and transporting marijuana. More than 30 marijuana kilo bricks were in the large brown suitcase.

These facts, considered together, provide probable cause for the search. The reliable informant's tip there "might possibly" be narcotics in Furman's possession was corroborated by the officers' independent investigation. Adequate foundation was laid establishing the reliability of Link as an investigative device. Evidence of Link's high level performance and great degree of accuracy in detecting marijuana odors justified reliance on Link's reactions as corroboration of the informant's tip.

Although we are aware of no reported cases involving the use of dogs as marijuana detectors, their use in tracking fugitives has long been admissible in evidence to show an accused was the doer of a criminal act. (See Wigmore, Evidence (3d ed.) § 177, pp. 633-634.)

The officers as reasonably prudent men were justified in the search and seizure.

Judgment affirmed.

Whelan, J., and Ault, J., concurred.