[No. 976-2.    Division Two.    March 27, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. WALTER LEON DRAPER, *Appellant.*

K. *Michael Jennings* and *McCormick, Hoffman, Rees & Arnold,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

ARMSTRONG, J.—Defendant appeals from a conviction of unlawful delivery of a controlled substance, to wit: sodium secobarbital, more commonly known as seconal. It is uncontradicted that at the time of the alleged sale or delivery, Mr. Draper did have in his possession a vial containing seconal capsules, which had been obtained pursuant to a prescription issued by a doctor. However, Mr. Draper denies that he transferred any of the capsules to the undercover narcotics agent who testified against him.

The incident involved in this appeal occurred during the early morning hours of November 12, 1972. During a period of approximately one and one-half weeks prior to the incident, on four or five occasions, an undercover narcotics agent of the Tacoma Police Department had solicited the purchase of drugs from the defendant, or in the defendant's words: "he happened to ask me if I had anything, or knew where he could get something, to make him chew his gum faster." These attempts to purchase drugs from the defendant were unsuccessful.

On the night in question, the defendant had been drinking in a local tavern until about 2 a.m. He had seen the undercover narcotics agent at the tavern, and had declined the agent's solicitations. The defendant left the tavern with an acquaintance, Harry Fleming, whom the defendant had agreed to drive home. They had only proceeded a few blocks when the defendant experienced car trouble. The disabled vehicle was pushed to the side of the street into a parking place. While the defendant and his passenger were deciding what to do about the automobile, the undercover agent,

who had been walking down the street, approached the defendant and offered assistance in placing a broken driveline in the trunk of the automobile. According to the defendant's testimony, he simply decided to leave the disabled vehicle where it was parked. The defendant testified that he and his passenger then walked directly to a nearby Mexican restaurant to get something to eat. They were both arrested inside the restaurant by two Tacoma police officers.

According to the testimony of the undercover agent and the defendant's passenger, after the disabled vehicle had been pushed into the parking place, the defendant and Mr. Fleming got back into the automobile, and the undercover agent entered the back seat. The agent then engaged Mr. Draper in a short conversation about drugs, which resulted in the transaction for which the defendant was convicted. The testimony of the state reflects that the defendant gave the agent ten "reds" or seconal capsules in an envelope in exchange for five $1 bills. The serial numbers of the bills had been previously recorded and the five $1 bills were found in the shirt pocket of the defendant when he was searched incident to his arrest.

The first contention of the defendant in this appeal is that the trial court erred by admitting, over counsel's objection, prejudicial, inflammatory, and irrelevant evidence. The evidence in question included exhibit 4, a paper sack containing 12 vials of drugs issued to the defendant pursuant to a physician's prescription. The sack also contained miscellaneous shaving effects, toothpaste, and personal items. The paper sack was found within a black leather bag or satchel, exhibit 5, which was obtained from the trunk of defendant's automobile during an impoundment and inventory search of the vehicle. The black leather bag also contained five vials of drugs, in addition to personal items such as aftershave lotion, a shoe brush and a wallet.

Defendant contends that prejudicial error occurred when

the trial court allowed one of the arresting officers to display to the jury the drugs found in exhibits 4 and 5, and to read the labels on the vials. The labels read to the jury included temaril, seconal, empirin compound, belap 1, conar-A, niacin, chlor-trimeton, dexedrine and obetrol. There is no testimony anywhere in the record indicating which of the drugs were controlled substances.

■ The evidence was offered in this case on the basis that it was relevant to show the intent of the defendant. It is, of course, true that under certain circumstances even evidence of other crimes may be admissible if probative upon the issues of identity, felonious intent, motive, absence of accident or mistake, common scheme or plan, or if the evidence is relevant to any material issue before the jury. *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964); *State v. Boggs,* 80 Wn.2d 427, 495 P.2d 321 (1972). The test that is applied where there is a question regarding the admissibility of evidence of other crimes, or of any evidence with an inflammatory potential, is whether or not its probative value is outweighed by its prejudicial effect. *State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970). Perhaps the most famous statement of this rule can be found in *State v. Goebel, supra* at page 379:

> [T]his class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.

On the facts before us, the contention that this evidence was relevant to show intent is so tenuous that it does not take much prejudicial effect to "outweigh" its probative value. It is difficult, if not impossible, to see exactly how the defendant's lawful possession of prescription drugs

among his personal effects and toiletry articles bears on his intent to unlawfully deliver the particular controlled substance alleged, particularly where some of the drugs admitted may not have been controlled substances. To display to the jury this perhaps unusual quantity of assorted prescription drugs, admittedly in the defendant's lawful possession, could do little more than cast aspersions and create potential bias against the defendant.

We are of the opinion that the relevance of the evidence in this case was negligible in view of the risk of confusion and prejudice, and that prejudicial error occurred when the drugs were admitted and displayed to the jury.

■ The defendant also contends that prejudicial error occurred when the trial court refused to give a proposed instruction on entrapment. The proposed instruction is not set forth in defendant's brief as required by CAROA 42(g) (1)(iii), and pursuant to CAROA 43 this court has not considered the propriety of the requested instruction. However, if an entrapment instruction is requested upon the retrial of this case, we deem it important to note that on the record presently before us, the trial court was absolutely justified in refusing to give any instruction on entrapment for the following two independent reasons.

First of all, throughout the trial the defendant consistently denied that he transferred any pills to the undercover narcotics agent, and denied that he accepted any money from the agent. The defense of entrapment is an affirmative defense which necessarily assumes that the act charged was committed. *State v. Morgan*, 9 Wn. App. 757, 759, 515 P.2d 829 (1973). The defendant was not entitled to an entrapment instruction since it is well settled by the clear weight of authority that the defense of entrapment is not available to one who denies that he committed the act charged. *United States v. Hendricks*, 456 F.2d 167, 169 (9th Cir. 1972); *Wilson v. United States*, 409 F.2d 184 (9th Cir. 1969); Annot., 61 A.L.R.2d 677 (1958), 56-63 A.L.R.2d L.C.S. 416 (1967, Supp. 1973); 21 Am. Jur. 2d *Criminal Law* § 144, at 214 (1965); 25 Am. Jur. 2d *Drugs, Narcotics,*

*and Poisons* § 45, at 317 (1966); 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 132 (1957, Supp. 1974); *contra, People v. Perez,* 62 Cal. 2d 769, 401 P.2d 934, 44 Cal. Rptr. 326 (1965); *State v. Fitzgibbon,* 211 Kan. 553, 507 P.2d 313 (1973).

█ Secondly, the only evidence bearing on the entrapment issue in this case is that the defendant had refused to sell or transfer drugs to the same narcotics agent on several occasions prior to the arrest. The agent admitted that on four or five occasions he had tried to bring drugs into conversations with the defendant every time he could. However, it is clear from the record that the defendant was merely given an opportunity to commit the crime and was not in any way lured, inveigled or induced into the commission of a criminal act. Therefore, even if the defendant had admitted the transfer, the evidence would not warrant an instruction on entrapment. *State v. Waggoner,* 80 Wn.2d 7, 11, 490 P.2d 1308 (1971); *State v. Morgan, supra.*

Because of the prejudicial admission of evidence unrelated to the crime charged, the conviction is reversed and the cause remanded for new trial.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied April 30, 1974.

Review denied by Supreme Court June 24, 1974.