536 P.2d 226

**The STATE of Arizona, Appellee,**

v.

**George QUATSLING, Appellant.**

**No. 2 CA–CR 520.**

Court of Appeals of Arizona, Division 2.

June 4, 1975.

Rehearing Denied July 14, 1975.

Review Denied Sept. 25, 1975.

Bruce E. Babbitt, Atty. Gen., William J. Schafer III, by John Pressley Todd, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, by Karen Zizmor, Asst. Public Defender, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant was convicted of two counts of burglary and two counts of grand theft. A prior conviction of bank robbery was alleged.

Appellant challenges the propriety of the search of a storage facility rented by him which disclosed items taken in the alleged burglaries. His pre-trial motion to suppress was denied. Secondly, he challenges the sufficiency of the evidence.

## LAWFULNESS OF SEARCH AND SEIZURE

Because of recent burglaries of explosives (unrelated to the burglaries which formed the basis of appellant's convictions) a police surveillance team was organized to observe appellant's activities.[1] During a one-day surveillance, appellant seemed to drive erratically. Specifically, he would slow his vehicle to a very reduced speed, make U-turns in the middle of intersections, rapidly accelerate and continually look backward. The police also observed appellant visit a storage locker at the Mini-Storage Lot in Tucson, which he rented under an assumed name.

At about 9:00 p. m. on October 2, 1974, the officers returned to the storage locker with a dog trained to detect the presence of explosives. Appellant's locker was located in a rental complex which consisted of four parallel storage buildings subdivided into 10 to 15 storage lockers on both sides of the building. Access drive-

1. Since 1962 appellant had had a criminal record of involvement with unlawful and dangerous explosives. On July 1, 1974, he was arrested for possession of fire-bombs made from approximately 51 sticks of dyna-mite, but no charges were filed. Because of his prior involvement with explosives, the Tucson Police Bomb Squad supervisor asked the department's special investigation unit to place appellant under surveillance.

ways ran between the buildings with gates at the end of each driveway. The complex was open seven days a week from 7:00 a. m. to 10:00 p. m.

The officers walked through an open gate with the dog and went around one of the buildings to the access driveway leading to appellant's locker. The officers then allowed the dog to work the side of the building where appellant's locker was located. The dog reacted in front of appellant's locker, indicating that the locker contained, or might have recently contained, some type of explosive.

At about 9:45 p. m., Officer Gomez applied for a telephonic search warrant. He gave the following information over the telephone:

(1) Appellant was suspected of possessing explosives;

(2) Earlier that year appellant had been arrested for possessing sticks of dynamite, packaged in four bombs;

(3) The reason the dog trained to detect explosives was reliable (training, prior searches and practice runs);

(4) The officer had seen appellant at the storage locker in question;

(5) Appellant had been "tail" conscious when Officer Gomez followed his vehicle;

(6) The dog had become alerted at appellant's storage locker.

After obtaining a telephonic search warrant, the officers returned to the rental lockers and served the warrant on the manager. A search of the locker revealed: (1) residue from explosives on some of the pillows in the locker; (2) many of the tools taken during the burglaries and theft of the explosives; and (3) several padlocks which had previously secured some of the burglarized buildings and explosive storage facilities.

The State established the following at trial. The buildings had been secured prior to the burglaries; there were no signs of forced entry; some of the buildings were still locked after the thefts and from others the padlocks had been taken; and many of the tools and some of the padlocks taken from the buildings were recovered from the storage locker rented by appellant under an assumed name.

Appellant presents the following arguments for reversal. First, insufficient facts were provided to the magistrate issuing the search warrant upon which to predicate a finding of probable cause. Second, appellant's prior possession of explosives could not be used to establish probable cause. Third, the entry into the mini-storage lot by the police was an unconstitutional invasion of privacy. Fourth, the use of the dog to detect explosives in appellant's storage locker constituted an illegal search and therefore could not be a legitimate basis upon which to predicate a finding of probable cause to issue the search warrant.

■ Starting with appellant's last argument, this issue was expressly rejected in United States v. Fulero, 162 U.S.App.D.C. 206, 498 F.2d 748 (1974). There, the argument was held to be frivolous and we feel bound by that court's determination.

■ Appellant's claim of invasion of privacy by the police officers when they entered the mini-storage lot is also without merit. The facts disclose that the facilities were semi-public in nature and open for business at the time the officers entered and subsequently obtained a search warrant. In Recznik v. City of Lorain, 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968), the United States Supreme Court seems to have inferentially recognized the right of the police to enter public places. In State v. LaDuca, 89 N.J.Super. 159, 214 A.2d 423 (1965), the following observation is made:

"[A] private business whose doors are open to the general public is also to be considered open to entry by the police for any proper purpose not violative of the owner's constitutional rights—e. g., patronizing the place or surveying it to promote law and order or to suppress a breach of the peace." 214 A.2d at 426.

*See also*, State v. Baker, 112 N.J.Super. 351, 271 A.2d 435 (1970).

We hold that the nature of the storage facilities did not give rise to a reasonable expectation of privacy and the police were entitled to enter the premises.

■ Appellant's prior possession of explosives could be used as a "practical consideration" to be taken into account by the magistrate when weighing the facts to determine if probable cause existed to issue a search warrant. In United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the United States Supreme Court held that the suspect's reputation could be taken into consideration when assessing the reliability of an informant's tip. We think it logically consistent with the holding in *Harris* to make use of appellant's reputation in the instant situation.

■ In view of our resolution of the preceding issues, it follows that probable cause to issue a search warrant existed. The facts presented were sufficient to support a finding that probable cause existed that specified property, i. e., instrumentalities or evidence of a crime, would be found.

## SUFFICIENCY OF THE EVIDENCE

■ The mere possession of stolen property in and of itself is insufficient to warrant a conviction of burglary. State v. Brookshire, 107 Ariz. 21, 480 P.2d 985 (1971). However, Arizona courts have consistently held that the "unexplained possession of recently stolen goods is a circumstance from which a jury might infer a defendant's guilt when supported by the slightest corroborative evidence." State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); State v. Miguel, 15 Ariz.App. 17, 485 P.2d 841 (1971). Appellant argues that the evidence could only support a conviction for possession of stolen property. This conclusion is premised on the assertion that there was no evidentiary showing of the requisite elements of entry and intent. Appellant's argument is without merit.

■ The element of intent may be inferred from all the facts and circumstances disclosed by the evidence, State v. Loggins, 13 Ariz.App. 577, 479 P.2d 724 (1971), and need not be established by direct proof. The existence of intent is one of the questions of fact for the jury's determination. State v. Johnson, 11 Ariz. App. 478, 466 P.2d 29 (1970). In order to reverse on the grounds of insufficient evidence, there must be a complete absence of probative facts to support the verdict. State v. Beers, 8 Ariz.App. 534, 448 P.2d 104 (1969). Furthermore, on appeal this court must consider the evidence and possible inferences therefrom in a manner most favorable to upholding the verdict. State v. Miller, 16 Ariz.App. 96, 491 P. 2d 485 (1971).

■ The record discloses that padlocks which had been used to secure the burglarized buildings were found in appellant's rented storage facility. Additionally, a search of appellant's trailer pursuant to a warrant disclosed assorted locksmith paraphernalia. Possession of the locks is sufficient circumstantial evidence to sustain a finding of entry, and possession of locksmith equipment is sufficient circumstantial evidence to sustain a finding of intent based upon an entry by surreptitious means. State v. Dusch, 17 Ariz.App. 286, 497 P.2d 402 (1972).

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.