UNITED STATES of America, Appellee,

v.

**Johann MEYER, Defendant-Appellant.**

UNITED STATES of America, Appellee,

v.

**John SKELCHER, Defendant-Appellant.**

**Nos. 75–1125, 75–1126.**

United States Court of Appeals,
First Circuit.

Submitted Feb. 3, 1976.
Decided June 22, 1976.

---

Melvyn Kessler, Miami, Fla., on brief for appellants.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R. and Jose A. Quiles, Asst. U. S. Atty., San Juan, P. R., on brief for appellee.

Before COFFIN, Chief Judge, MATTHES,** Senior Circuit Judge, and McENTEE, Circuit Judge.

MATTHES, Senior Circuit Judge.

Johann Meyer and John Skelcher (appellants) were charged in a four count indictment with conspiracies to import and to possess with intent to distribute Schedule II controlled substances, and with substantive offenses. Initially, they pleaded not guilty to all four counts. After unsuccessfully moving to suppress the evidence seized in the search conducted pursuant to a search warrant, appellants entered a plea of guilty to Count I,[1] and with the consent of the United States Attorney and the apparent approval of the District Court, the appellants appealed from the conviction for the sole purpose of testing the sufficiency of the affidavit for the search warrant.[2]

---

** Of the Eighth Circuit, sitting by designation.

1. Counts II, III and IV were dismissed.

2. Considering the circumstances which apparently induced the plea of guilty, i. e., the agreement by the United States Attorney that appellants would not forfeit their right to appeal and challenge the validity of the search warrant, we pretermit discussion of whether the guilty plea foreclosed the right to appeal. See United States v. Warwar, 478 F.2d 1183 (1st Cir. 1973).

We express no opinion concerning the propriety of the procedure followed below, see id. at 1185 n. 1, and prefer to leave the resolution of this difficult issue to a case where it has been properly presented by the parties.

Adhering to their avowed purpose the appellants limit their appeal to a challenge of the sufficiency of the affidavit for the search warrant.

The affidavit, lengthy in form and obviously the product of an experienced official, is reproduced in substance only.

The affidavit executed by Hector Santiago, a special agent for the Drug Enforcement Administration (DEA), averred the following facts as tending to establish the requisite probable cause.

Appellants boarded the passenger liner *SS Cunard Adventurer* in Venezuela. During the trip they were under the surveillance of a DEA agent and an officer of the Royal Canadian Mounted Police. Upon the ship's arrival at San Juan, appellants disembarked to visit a car rental agency, but took no luggage with them. Their cabin on ship was searched during their absence with negative results. Appellants returned to the ship. Later they made a second trip to shore, this time carrying some packages. A customs search of the packages was made and again no contraband was found. During this second trip appellants were again placed under surveillance and were observed renting room 456 of the Hyatt House Hotel. Appellants then returned to the *Adventurer*. Thereafter, the ship's security officer turned over to Agent Santiago a sample of cocaine previously obtained from one of the appellants.[3] Appellants then made a third trip to shore taking all their luggage. After disembarking the third time, a search was made both of appellants and their luggage—yet again, no contraband was discovered. Agent Santiago, a Customs Patrol Officer, and the ship's security officer then made a search of the cabin in which appellants had stayed. As-

sisting them in the search was "a trained dog." Agent Santiago stated that the dog reacted positively to the scent of narcotics "in certain camera boxes and plastic bags that were found in the cabin." After leaving the *Adventurer* for the third and final time, appellants did not return to the Hyatt House Hotel room. Instead, they were observed at the Holiday Inn in Isla Verde, where they rented a room, and at the Isla Verde International Airport.

On the basis of these facts, the magistrate concluded that there was probable cause to search for cocaine and other narcotics and issued a warrant commanding a search of Room 456 of the Hyatt House Hotel. The search that followed resulted in the seizure of approximately ten pounds of cocaine.

Further delineating their attack, appellants argue that the use of the canine to detect the scent of narcotics is akin to the use of an informer and that the affidavit is fatally defective for the reason that it fails to demonstrate the "informant's" reliability.

■ An affidavit in support of an application for a search warrant may be based on hearsay, but the magistrate must be informed (1) of the underlying facts upon which the informer has based his conclusions and (2) the circumstances from which the affiant has concluded that the informant was credible or his information reliable. *See Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *see also Von Utter v. Tulloch*, 426 F.2d 1 (1st Cir. 1970).

■ Here, there is no difficulty with respect to the first prong of the *Aguilar* test. Appellants theorize, however, that

---

**3.** Although the record shows that the district court conducted an evidentiary hearing on the motion to suppress, we have not been supplied with a transcript of that proceeding. The Government states in its brief, however, that at the hearing Agent Santiago testified that appellant Johann Meyer had delivered a sample of cocaine to the ship's casino manager, James Taylor, on August 8, 1974 when the ship was still at sea. Taylor, in turn, delivered the sample to the ship's security officer, Allan Booth-

man, who kept the cocaine in a safe until he turned it over to Agent Santiago after the ship docked in San Juan.

While appellants do not dispute the accuracy of this information, we add it as background detail only because it does not affirmatively appear from the record that the magistrate was apprised of these facts prior to issuance of the warrant. *See, e. g., Saville v. O'Brien*, 420 F.2d 347, 349 n. 5 (1st Cir. 1969).

the affidavit failed to sufficiently describe the dog's proficiency in the detection of narcotics. We are not impressed with this argument. A magistrate's determination of probable cause is based upon a common sense and realistic reading of the entire affidavit. *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). From the record it is evident that affiant was an experienced DEA agent and that the dog had been "trained" and used in drug investigations. Thus the magistrate could reasonably infer that the "trained dog" had attained a high degree of proficiency in detecting the scent of narcotics. The same concerns that would be present in a human informant are simply not relevant here. *Cf. United States v. Pond,* 382 F.Supp. 556 (S.D.N.Y.1974). An acute sense of smell is characteristic of canines, but out of the ordinary in humans. Moreover, a canine, when trained, reacts mechanically to certain cues in his environment.

 Furthermore, the word "trained," when considered in the context of the affidavit, has a common and well understood meaning. Webster's Third New International Dictionary (Unabridged 1965) defines "train" as meaning "to instruct or drill in habits of thought or action" or, alternatively, "to teach (an animal) to obey a command." Assuming, therefore, that the magistrate was a qualified official possessing ordinary and reasonable intelligence and prudence it does not in our view defy logic to conclude that the magistrate understood that the "trained dog" was endowed, by reason of experience and training, with the ability to sniff out cocaine.

In summary, we hold the affidavit, considered in its totality, was sufficient to satisfy the second prong of *Aguilar.*

 It is well-established, by now, that in doubtful or marginal cases a search with a warrant may be sustainable while one without it would fail.[4] *See United States v. Ventresca, supra; see also Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

 But quite apart from the question of the dog's reliability, we are convinced that the dog's positive reaction to the empty containers, augmented by other information in the affidavit, could lead a magistrate to believe that the information conveyed by the animal's strong "alert" was reliable. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *cf. Von Utter v. Tulloch, supra* at 3–4. From the affidavit it appears that a sample of cocaine, which had been obtained from one of appellants during the voyage from Venezuela, was turned over to Agent Santiago by the ship's security officer when the *Adventurer* docked in San Juan. Moreover, as previously described, appellants' conduct after their arrival in San Juan was highly suspicious. From these facts and the positive reaction to the scent of narcotics in the empty containers by a "trained" dog, a magistrate could reasonably conclude that there was probable cause to search for narcotics in the Hyatt House Hotel room.

In summary, we find no violation of appellants' fourth amendment rights. The judgments of conviction are affirmed.

---

4. *Compare United States v. Race,* 529 F.2d 12 (1st Cir. 1976). There, a dog trained to detect the presence of narcotics reacted to two large crates by biting, scratching, and barking. On the basis of the dog's reaction and defendant's representation to airline employees that he was the consignee, government agents made a warrantless arrest. We stated: "We do not . . suggest that any dog's excited behavior could, by itself, be adequate proof that a controlled substance was present, but . . . the Government laid a strong foundation of canine reliability and handler expertise." *Id.* at 14.

In the instant case, accordingly the proper preference to a search made with a warrant, the fact that the dog was "trained" and used by DEA agents in drug investigations sufficiently established canine reliability.