[No. 2466-3.   Division Three.   July 24, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. MATHEW
WOLOHAN, *Appellant.*

814

McINTURFF, J., dissents by separate opinion.

*Robert Royal* and *Porter, Schwab, Royal & Edmondson,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David W. Waterbury, Deputy,* for respondent.

MUNSON, J.—On March 2, 1977, police Detective Daniel Ray and his drug–sniffing dog, Chinook, were patrolling the Greyhound Bus package express area in Phoenix, Arizona. This patrol was part of Detective Ray's regular assignment to detect controlled substances in and around mass transportation areas of Phoenix. At 6:24 p.m., Chinook "alerted" to a wrapped, book–sized parcel. Six minutes later Detective Ray opened the box and discovered approximately

1 1/2 pounds of bulk marijuana. The package was addressed to one Matt Wolohan, Yakima, Washington. Detective Ray telephoned the Yakima police and informed them of his and Chinook's discovery. On the basis of the phone call, and a teletype which followed detailing Chinook's reliable record of 40 prior cases with 42 arrests, a search warrant was issued in Yakima. The following evening Mathew Wolohan was intercepted by the police as he carried the package from the Yakima bus terminal. He was tried and convicted for possession of marijuana.

The trial court in ruling on a motion to suppress concluded that the warrant was validly based on Chinook's unerring nose and his reaction to the package addressed to Wolohan, independent of Detective Ray's opening of the package in Phoenix. Wolohan contends that the warrantless "search," *i.e.,* the sniffing of his package, did not come within one of the recognized exceptions to the warrant requirement, and unless the search in Phoenix was lawful, the results of that search could not be used to justify the search warrant issued in Yakima.[1] The primary issue before this court is whether under these circumstances the detection by the dog was reliable information by itself upon which there was sufficient probable cause for a search warrant to issue. We hold that it was.

In jurisdictions where the question of the use of "canine cannabis connoisseurs"[2] has been raised in regard to establishing probable cause for an arrest or search, the courts have held that prior information of specific criminal activity in conjunction with a dog whose reliability has been shown has provided probable cause. Subsequent searches

---

[1] The trial judge observed that the search by the detective may have been illegal, but found that the warrant was issued solely on the basis of the dog's detection, as attested by the issuing magistrate, rather than the detective's subsequent search. In the detective's telegram he had justified the opening of the package on the basis of emergency circumstances since the package was due to depart by bus within 1 1/2 hours after Chinook "alerted."

[2] This term is not original to this court.

have been upheld generally based on one of two theories: (1) the plain–view, or more properly the plain–smell, doctrine, or (2) that the sniff was a reasonable search under the circumstances.[3] In almost all cases some prior information has been required. Here, the detective apparently had no specific information. See *Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search in Violation of Fourth Amendment,* Annot., 31 A.L.R. Fed. 931 (1977).

In some cases a reliable informant has notified police of a parcel containing drugs which has then been corroborated by a sniffing dog. *United States v. Bronstein,* 521 F.2d 459, 31 A.L.R. Fed. 920 (2d Cir. 1975), *cert. denied,* 424 U.S. 918 (1976); *United States v. Fulero,* 498 F.2d 748 (D.C. Cir. 1974); *People v. Campbell,* 67 Ill. 2d 308, 367 N.E.2d 949 (1977), *cert. denied,* 435 U.S. 942; *State v. Martinez,* 26 Ariz. App. 210, 547 P.2d 62 (1976), *aff'd,* 113 Ariz. 345, 554 P.2d 1272 (1976). In other cases police had a suspect under surveillance who exhibited suspicious behavior. A dog was then brought in and provided probable cause for a subsequent search. *United States v. Venema,* 563 F.2d 1003 (10th Cir. 1977); *United States v. Meyer,* 536 F.2d 963 (1st Cir. 1976); *State v. Quatsling,* 24 Ariz. App. 105, 536 P.2d 226 (1975). An unreliable informer and an anonymous tip corroborated by the alert of a dog has provided probable cause. *United States v. Solis,* 536 F.2d 880 (9th Cir. 1976); *State v. Elkins,* 47 Ohio App. 2d 307, 354 N.E.2d 716 (1976). In one case, a customs agent had no prior information but a reliable dog provided probable cause for a subsequent search. *United States v. Race,* 529 F.2d 12 (1st Cir. 1976).[4] However, in California the courts have suppressed

---

[3]The two theories have generated a great deal of academic debate. *See* Schuster, *Constitutional Limitations on the Use of Canines to Detect Evidence of Crime,* 44 Fordham L. Rev. 973 (1976); Peebles, *The Uninvited Canine Nose and the Right to Privacy: Some Thoughts on Katz and Dogs,* 11 Georgia L. Rev. 75 (1976); *United States v. Solis: Have the Government's Supersniffers Come Down With a Case of Constitutional Nasal Congestion?,* 13 San Diego L. Rev. 410 (1976).

[4]We also note a recent case denied review by the United States Supreme Court in which a dog, outside a private compartment aboard a train, was used to

evidence based solely on the alert of a dog with no prior tip. *People v. Evans,* 65 Cal. App. 3d 924, 134 Cal. Rptr. 436 (1977); *People v. Williams,* 51 Cal. App. 3d 346, 124 Cal. Rptr. 253 (1975). We decline to follow California for the reasons stated below.

▉▉▉▉ The primary question which must be addressed is whether Wolohan had a legitimate expectation of privacy in the invaded place. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). As noted in *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 401 n.12, 99 S. Ct. 421 n.12 at 430 (1978): "a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered." A sender or a receiver of parcels by common carrier has only a limited expectation of privacy as distinguished from a sender or receiver of first–class mail. *See United States v. Van Leeuwen,* 397 U.S. 249, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970). Common carriers have the right to protect themselves and not be the unwitting carriers of contraband and may search parcels if they have reason to believe they contain contraband. *State v. 1969 Volkswagen Bus, VIN 239199800,* 120 Ariz. 365, 586 P.2d 210 (1978); *State v. Fassler,* 108 Ariz. 586, 503 P.2d 807 (1972). In *United States v. Chadwick,* 433 U.S. 1, 13, 53 L. Ed. 2d 538, 97 S. Ct. 2476, 2484 (1977), the court significantly stated: "Luggage contents are not open to public view, *except as a condition to . . . common carrier travel*; . . ." (Italics ours.) The sniff of a bag or parcel by a dog in a baggage or parcel area is a minimal and limited intrusion;

---

sniff contraband inside the compartment. *Wolkind v. Virginia,* 440 U.S. 958, 59 L. Ed. 2d 770, 99 S. Ct. 1498 (1979). An examination by this court of the briefs submitted to the Supreme Court, docket No. 78–860, indicated no opinion had been written in the case. The defendant was convicted of possession of marijuana; the Supreme Court of Virginia declined to review the trial court proceedings. The question presented to the Supreme Court was as follows: "Does Fourth Amendment forbid police, acting with neither warrant nor probable cause to believe that contraband would be found, to use specially trained animal to ferret out contraband, in order to establish whether locked private luggage stored in private sleeping compartment contains contraband?" *Wolkind v. Virginia,* 47 U.S.L.W. 3485 (U.S. Jan. 16, 1979).

the contents of a parcel remain entirely undetected except for marijuana, cocaine, hashish, or heroin. "[I]t is hard to imagine that an innocent person could have any objection to his package, placed in transit on a common carrier, being sniffed by a trained dog." *State v. Elkins, supra* at 312. The sole purpose of the limited intrusion is to detect contraband and not to violate the sanctity of any personal possessions. *See United States v. Head,* 416 F. Supp. 840 (S.D.N.Y. 1976), *cert. denied* sub nom. *Wheaton v. United States,* 430 U.S. 931 (1977). (Use of fluoroscope to detect contraband in international mail).

A baggage area by its nature is at least a semi–public place where people will be circulating through the area, either employees or people picking up or sending packages. The outside of the package is open to view and the package is subject to dropping or tearing. We hold that although Wolohan may have had a limited expectation of privacy as to the contents and his personal effects in a package in transit, he did not have a reasonable expectation of privacy in the area in which the package itself was located, the parcel area, nor in the air space immediately surrounding the package from which the odor emanated. *See United States v. Solis, supra; State v. Quatsling, supra.*

Wolohan contends Detective Ray and Chinook were in a place they had no right to be and were conducting no more than a general exploratory search. Thus the "search" by the dog was unlawful. In general, exploratory searches have been held unreasonable and in fact such searches were the very genesis of the constitutional requirement for warrants. *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 75 L. Ed. 374, 382, 51 S. Ct. 153 (1931). Here, the affidavit for the search warrant stated that Detective Ray was

> an experienced narcotics officer whose assignment involves the detection of possible controlled substances in and about the mass transportation areas of Phoenix, Arizona. That he is regularly assigned to these areas with the narcotics dog known as "Chinook" each day for eight

hours. That he is familiar with the appearance of marijuana in its various modes of packaging and transportation.

The affidavit implies that Detective Ray regularly visited such places as Greyhound and there was nothing to suggest that he was in the package area by anything other than the permission of Greyhound, nor does Wolohan make such a contention. *Cf. People v. Williams, supra.* We decline to follow *People v. Williams, supra,* in which the court found an unlawful trespass by the police. There is nothing in this record to indicate that Detective Ray was a trespasser. Unlike the deputies in *Williams,* Detective Ray had had prior experience in mass transportation facilities and the affidavit suggests he suspected the possibility of controlled substances in that area. The logical extension of Wolohan's argument would be that any time a dog alerted to an object in a place where the officer had a right to be, the alert would have to be ignored and a warrant could not be issued unless the officer had prior information regarding the object.

> Generally evidence acquired by unaided human senses from without a protected area is not considered an illegal invasion of privacy, but is usable under doctrines of plain view or open view or the equivalent. Odors so detected may furnish evidence of probable cause of "most persuasive character, . . ."

*United States v. Solis, supra* at 881.

In *United States v. Johnston,* 497 F.2d 397, 398 (9th Cir. 1974), the court held that a police officer's sniffing of a suitcase provided probable cause for a subsequent search. It has been held that the distinctive odors of opium and whiskey mash would have provided probable cause for which the officers should have sought a search warrant. *Chapman v. United States,* 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776 (1961); *Johnson v. United States,* 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948); *Taylor v. United States,* 286 U.S. 1, 76 L. Ed. 951, 52 S. Ct. 466 (1932). In *Johnson v. United States, supra* at 13, the court stated:

If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

Here, as contrasted to these last three cases, the police did the very thing they were directed to do by the cases, *i.e.,* draft an affidavit setting forth the basis for their probable cause and go before an independent magistrate seeking a search warrant.

Because Wolohan had no reasonable expectation of privacy and because the police officer was in a semi–public place, we believe the sniffing of the dog was not an illegal search, but more properly his alert comes within the "plain–smell" doctrine adopted by the majority of jurisdictions which have considered the question. However, even if the sniffing of the dog were construed to be a search, it was a reasonable search in which Wolohan had no legitimate expectation of privacy. A dog is not an electronic device, nor used to intercept private communications between people. *See Katz v. United States, supra.* A dog's "search" is limited solely to illegal substances. As noted in *People v. Campbell, supra* at 317:

[T]he use of trained dogs to detect the odor of marijuana poses no threat of harassment, intimidation or even inconvenience to the innocent citizen. Nothing of an innocent but private nature and nothing of an incriminating nature other than the narcotics being sought can be discovered through the dog's reaction to the odor of the narcotics.

We find under the circumstances the dog by itself provided probable cause for the warrant to issue.[5]

---

[5]While the issue is not before us, we entertain grave doubts whether the above rationale would permit a similar search in a public waiting room or of carry–on luggage, parcels or other personal effects on or near the person. Obviously, such a search would invade a person's legitimate expectation of privacy.

The remaining assignments of error may be disposed of summarily. Wolohan contends there is insufficient evidence to support his conviction for possession of marijuana. The evidence discloses that Wolohan had visited friends in Arizona shortly before the package arrived in Yakima. The package was addressed to him and contained his phone number. He, in response to notification of its arrival, had picked it up and signed for the package. We find there was sufficient evidence to submit the question of guilt to the jury.

In Wolohan's possession at the time he was arrested was a pipe which contained a residue of marijuana. A small quantity of marijuana was also found on his person. Wolohan contends that during cross–examination the trial court erred in allowing the State to inquire if he had previously used marijuana and whether he was prepared to smoke any that day. He answered both questions, over objection, in the affirmative. Wolohan argues that such evidence of other crimes was inadmissible, relying on State v. Draper, 10 Wn. App. 802, 521 P.2d 53 (1974). That case, however, is distinguishable because Draper had a quantity of drugs lawfully in his possession. Here, these inquiries went to the issue of whether Wolohan knew that what he had in his possession was in fact marijuana and for that reason was admissible. This evidence had probative value, going to his awareness of the contents of the package. See State v. Boyer, 91 Wn.2d 342, 588 P.2d 1151 (1979); State v. Dault, 19 Wn. App. 709, 578 P.2d 43 (1978).

Wolohan's contention that the admissibility of the street value of the marijuana was error is not well taken. State v. Liles, 11 Wn. App. 166, 521 P.2d 973 (1974), and State v. Pristell, 3 Wn. App. 962, 478 P.2d 743 (1970). Finally, Wolohan contends the court erred in failing to give one of his proposed instructions. We find this issue is satisfactorily covered in the other instructions given by the court. State v. Hopkins, 71 Wn.2d 10, 426 P.2d 496 (1967).

Judgment affirmed.

GREEN, C.J., concurs.

MCINTURFF, J., (dissenting)—"When indeed will reasonable means to search stop and 1984 begin?"[6] The prospect of canine sniffers lying in wait at every corner, conducting what under these facts must be termed an exploratory search, offends my sensibilities and the principles underlying the Fourth Amendment.

Courts from other jurisdictions have previously wrestled with the question of the Fourth Amendment's applicability to the activities of the canine cannabis connoisseur. While there is disagreement over whether sniffing by the uninvited canine nose constitutes a search, the cases are virtually unanimous in requiring or finding that the police officer entertained a *reasonable suspicion* regarding the presence of contraband in the particular area to be searched prior to employing the canine's drug–sensitive senses.[7]

Where the police officer has no such antecedent justification, however, resort to the canine's senses has been condemned as an exploratory search or, more appropriately, a

---

[6]Lederer & Lederer, *Marijuana Dog Searches after United States v. Unrue,* The Army Lawyer, DA Pam 27–50–12, 11 (Dec. 1973) (referring to the book by G. Orwell, *1984* (New Am. Lib. ed. 1971)—which presents a futuristic view of the world subject to increased governmental regulation.)

[7]In the following cases, the use of the trained dog was upheld because the police officer's reasonable suspicions had been previously aroused by (1) a tip from a reliable informant: *United States v. Bronstein,* 521 F.2d 459, 31 A.L.R. Fed. 920 (2d Cir. 1975), *cert. denied,* 424 U.S. 918 (1976); *State v. Martinez,* 26 Ariz. App. 210, 547 P.2d 62 (1976), *aff'd,* 113 Ariz. 345, 554 P.2d 1272 (1976); *People v. Furman,* 30 Cal. App. 3d 454, 106 Cal. Rptr. 366 (1973); *Wolkind v. Virginia,* 440 U.S. 958, 59 L. Ed. 2d 770, 99 S. Ct. 1498 (1979); (2) police corroboration of an unreliable tip: *United States v. Solis,* 536 F.2d 880 (9th Cir. 1976); *United States v. Fulero,* 498 F.2d 748 (D.C. Cir. 1974); *State v. Elkins,* 47 Ohio App. 2d 307, 354 N.E.2d 716 (1976); or (3) police surveillance of an individual suspected of trafficking in drugs: *United States v. Venema,* 563 F.2d 1003 (10th Cir. 1977); *United States v. Meyer,* 536 F.2d 963 (1st Cir. 1976); *United States v. Race,* 529 F.2d 12 (1st Cir. 1976); *State v. Quatsling,* 24 Ariz. App. 105, 536 P.2d 226 (1975); *People v. Campbell,* 67 Ill. 2d 308, 367 N.E.2d 949 (1977), *cert. denied,* 435 U.S. 942.

sniffing expedition, violative of the Fourth Amendment.[8] This case falls squarely into the latter category.

The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law–enforcement agents, in order "'to safeguard the privacy and security of individuals against arbitrary invasions. . . .'" . . . Thus, the permissibility of a particular law–enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

(Footnotes and citations omitted.) *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 667–68, 99 S. Ct. 1391 (1979). The balance of interests, in my mind, weighs in favor of requiring the police officer to entertain a *reasonable suspicion* before resorting to the canine's olfactory senses to ferret out contraband among the personal belongings of an individual who consigns his packages or baggage to a common carrier.

The hallmark of a search is the intrusion into an area which a person is entitled to enjoy as private. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 584, 586, 88 S. Ct. 507 (1967). While a person's expectation of privacy legitimately diminishes when packages or baggage are consigned to a common carrier, I cannot agree that all Fourth Amendment protections are forfeited, thus authorizing wholesale examinations in the hope that a crime might be detected. *United States v. Bronstein,* 521 F.2d 459, 464, 465, 31 A.L.R. Fed. 920 (2d Cir. 1975), *cert. denied,* 424 U.S. 918 (1976) (J. Mansfield, concurring opinion). Shipment of personal effects by common carrier is a fact of life in our highly mobile society.

On the other hand, the degree of intrusion presented by the use of a trained dog to sniff the free air outside of the

---

[8]*United States v. Bronstein, supra* at 464 (J. Mansfield, concurring opinion); *People v. Evans,* 65 Cal. App. 3d 924, 134 Cal. Rptr. 436 (1977); *People v. Williams,* 51 Cal. App. 3d 346, 124 Cal. Rptr. 253 (1975).

package is less offensive in comparison with, for example, the ransacking of a personal residence or the indiscriminate use of sophisticated electronic surveillance devices. Therefore, the legitimate role of trained dogs in crime detection must be recognized.

J. Mansfield, in his concurring opinion in *United States v. Bronstein, supra,* reconciled these competing interests by declaring a canine sniff a reasonable search when, in advance of employing the canine's senses, the police officer has reasonable grounds to suspect the presence of contraband in a particular area. This approach, which I endorse, represents a thoughtful balance between the individual's expectation of privacy and the legitimate governmental interest in crime detection and prevention.

The requirement that a police officer entertain a reasonable suspicion in advance of official interference with the individual's legitimate expectation of privacy appears in other Fourth Amendment contexts as well. In *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868 (1968), the court endorsed the protective pat–down search for weapons by a police officer, without a warrant and without full probable cause, where he has *reason to believe* that he is dealing with an armed and dangerous individual. The police officer must be able to point to *specific articulable facts* which, taken together with their rational inferences from those facts, reasonably warrant that intrusion.

In *United States v. Brignoni–Ponce,* 422 U.S. 873, 45 L. Ed. 2d 607, 611, 95 S. Ct. 2574 (1975), the court analogized the roving patrol stop to the on–the–street encounter in *Terry v. Ohio, supra,* and held that except at the border and its functional equivalents, officers on roving patrol may stop vehicles if they are aware of *specific articulable facts* taken together with rational inferences from those facts that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.

Again, in *Delaware v. Prouse, supra,* the court declared random automobile stops by police officers unreasonable

under the Fourth Amendment in the absence of an "articulable and reasonable suspicion" justifying the particular stop. These cases and others recognize the important role the Fourth Amendment plays as a limitation upon police conduct even though the particular law enforcement practice falls short of a full–blown search. *Terry v. Ohio, supra* at 19.[9]

Here, police Detective Ray entertained no articulable or reasonable suspicion regarding the presence of contraband at the Greyhound Terminal in advance of Chinook's nosing it out. Unlike the cases from other jurisdictions, there was no tip from a reliable informant or prior police surveillance of the area in question which could be said to have legitimately aroused the officer's suspicions. The activities of the officer amounted to a general, routine, exploratory search of the package express area based upon nothing more substantial than, perhaps, an inarticulable hunch. The individual's expectation of privacy is thus subject to the unlimited discretion of the police officer, uncurbed by the Fourth Amendment. To condone the use of a trained dog in this manner invited wholesale sniffing expeditions of the individual and his possessions in the hope that a crime might be detected, thus eroding the principles underlying the Fourth Amendment and the public's right to be let alone. Therefore, I respectfully dissent.[10]

Reconsideration denied August 20, 1979.

Review denied by Supreme Court January 16, 1980.

---

[9] *Accord, Torres v. Commonwealth of Puerto Rico*, 439 U.S. 815, 61 L. Ed. 2d 1, 99 S. Ct. 2425 (1979): "[T]he grounds for a search must satisfy *objective* standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests." (Italics ours.)

[10] In footnote 5 of the majority opinion, grave doubts are expressed as to the legality of canine searches in a public waiting room or of carry–on luggage, parcels or other personal effects on or near the person, since such a search would invade a person's legitimate expectation of privacy. I fail to perceive any difference in fact between the present case and the use of a canine's olfactory senses in the above mentioned situations. The dog is not invading the person or personal effects—it is

merely sniffing or smelling the free air in and around the person and his possessions—the same as the package in this case. If the air emanating from the person or his possessions is free or public air, what is to prevent the indiscriminate use of the trained dog in any public place, searching anyone or anything in sight?