**UNITED STATES of America**

v.

**Solomon M. FULERO, Appellant.**

**No. 73–1923.**

United States Court of Appeals,
District of Columbia Circuit.

June 14, 1974.

Sherman L. Cohn, Washington, D. C. (appointed by this court), was on the brief, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, John H. Bayly and David R. Addis, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, ROBINSON and ROBB, Circuit Judges.·

PER CURIAM:

An indictment in two counts charged the appellant with unlawful possession of marijuana with intent to distribute it (21 U.S.C. § 841(a)) and with unlawful possession of the same marijuana in violation of 33 D.C.Code § 402. The appellant was tried without a jury before the District Court, found guilty, and placed on probation under the Youth Corrections Act, 18 U.S.C. § 5010(a). On this appeal he claims that the marijuana introduced in evidence against him was seized during the course of an unlawful search.

The circumstances of the search and seizure were explored at a hearing on a motion to suppress. The record discloses that an employee at the Greyhound Bus Depot in Yuma, Arizona, telephoned Sergeant Kindle of the Yuma City Narcotic Task Force and told him "three hippies had brought in two footlockers that were being sent to Washington, D. C. and that the situation appeared suspicious." Shipping marijuana through Greyhound was "normal practice in Yuma" (Tr. 7) and on many prior occasions agents of the depot had spotted packages containing marijuana. Sergeant Kindle went to the depot and looked at the footlockers, one of which was green and the other blue. The name of Frank Delgado was on them as the shipper. Delgado was known to Sergeant Kindle as a man probably involved in the narcotics traffic. The sergeant noticed that the footlockers smelled of mothballs which was significant because mothballs are frequently used in an attempt to conceal the odor of marijuana, and Kindle had on many occasions found marijuana shipped in this fashion.

With these facts before him the sergeant called the United States Customs

Service and obtained the services of a dog handler and a marijuana-sniffing dog, Chief. When the handler and Chief arrived the two footlockers were placed "in different positions on the baggage floor with approximately ten to 12 [sic] other valises, pack, boxes, and so forth, all around the area, and then the dog handler was told to go ahead and run the dog through the packages." (Tr. 13.) The sergeant testified "the green foot-locker was the closest one to the dog and he went immediately to the green footlocker. The dog handler pulled him off and brought him back and walked him around a little bit, and had him walk through there again, and he went back to the green footlocker. He did it three times consecutively, and on the third time he pawed and tried to chew at the footlocker to get into it." (Tr. 15.)

The sergeant testified that he had seen Chief perform before, probably ten times or more and that on each occasion he had discovered marijuana. Chief had been working at the port of entry at San Luis, Arizona, regularly for at least two years and had been consistently reliable. (Tr. 13, 14, 21.)

His suspicions having been confirmed by Chief, the sergeant went before a Justice of the Peace and got a search warrant authorizing a search of the two footlockers. The affidavit in support of the warrant is in the record, Government Exhibit 2. When the search warrant was executed the trunks were found to contain 40 kilos (approximately 88 pounds) of marijuana. (Tr. 17.) Sergeant Kindle seized 24 kilos and sent 16 along to Washington after notifying the Washington Police that the shipment was on the way. The Washington Police covered the arrival of the lockers at the Greyhound Bus Terminal here and arrested Fulero when he picked them up.

The appellant contends that Chief's sniffing of the air around the footlockers was an unconstitutional intrusion into the lockers. We think the argument is frivolous. The appellant also contends that there was no probable cause for the issuance of the search warrant. We think there was ample probable cause and that the conduct of the police was a model of intelligent and responsible procedure.

The judgment is affirmed.