380 So.2d 1157 (1980)
Daniel Chavarria MATA and Ismael Gonzales Chavarria, Appellants,
v.
The STATE of Florida, Appellee.
No. 79-662.
District Court of Appeal of Florida, Third District.
March 11, 1980.
Pertnoy & Greenberg, Miami, Sam L. Foster, Monterey, Cal., for appellants.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., and HENDRY and HUBBART, JJ.
PER CURIAM.
Defendants, Daniel Mata and Ismael Chavarria, appeal an order denying their motion to suppress eight pounds of pure cocaine which formed the basis of the charges against them, possession with intent to sell a controlled substance. The undisputed facts are as follows:
On the morning of July 28, 1978, Officer Wolfe observed the defendant Ismael Chavarria purchasing for cash two one way tickets to San Francisco at the National Airlines ticket counter. She called Detective D'Azevedo who was on duty at the *1158 airport to assist in the observation of Chavarria in that D'Azevedo has extensive training in narcotics investigation and observes passengers at Miami International Airport on a daily basis. D'Azevedo's investigation revealed that the defendants had just arrived in Miami and later by checking with National Airlines learned the two were scheduled to return to San Francisco late that afternoon. After claiming their luggage Mata and Chavarria made a phone call, then took a taxi to a nearby motel and paid cash for the room. Police surveillance continued and Chavarria was observed leaving the room twice to make calls from the lobby pay phone. About 3 p.m. Mata and Chavarria, carrying a brief case and man's purse, emerged from the room and were met by a third man with whom they drove away. The police followed the vehicle but fearing discovery, discontinued the surveillance. Detective D'Azevedo returned to the airport and learned that 1) Chavarria and Mata had rescheduled their departure to 9:00 p.m., 2) the "call-back" telephone number they had given to National Airlines was a nonexistent number, and 3) they had traveled a circuitous route from San Jose to San Francisco to Los Angeles to Houston then to Miami but were returning directly to San Francisco. D'Azevedo decided to call for a narcotics dog from the U.S. Customs Department. At 8 p.m. Mata and Chavarria arrived at the airport and checked their luggage (two suitcases and a tote bag) which was placed on a chute to the baggage area and entered on the baggage carousel (a 200 foot moving circular conveyor belt). Detective Johnson who was down in the baggage area was contacted by D'Azevedo who gave him a description and the claim check numbers of the subject luggage. The narcotics dog, "Dewey", was brought in by his handler. Dewey sniffed the bags on the carousel and alerted on Mata's and Chavarria's bags. Johnson then removed their bags and placed them amongst other luggage positioned about 20 feet away from the carousel. Dewey again went up and down sniffing at all the bags and alerted on those bags belonging to Mata and Chavarria. Detective Johnson immediately called back D'Azevedo and told him that Dewey had positively alerted on the subject bags. Mata and Chavarria were arrested and a warrant was subsequently obtained to search the bags in which were found several glassine bags of cocaine.[1] As a result, Mata and Chavarria were charged with possession of cocaine with intent to sell. They filed a motion to suppress, essentially contending that the use of the narcotics dog, Dewey, to sniff the bags and the touching of these bags by Detective Johnson amounted to an illegal search and seizure. After an evidentiary hearing, the motion to suppress was denied and this appeal ensued. We affirm.
First, there is authority to the effect that the use of a narcotics dog cannot be considered a search. See United States v. Fulero, 162 U.S.App.D.C. 206, 498 F.2d 748 (D.C. Cir.1974). Where there has been no search, the constitutional guarantee against unlawful searches and seizures is not applicable. Smith v. State, 333 So.2d 91 (Fla. 1st DCA 1976). With regard to the contention of an illegal seizure, the law clearly defines a seizure as the act of taking custody of evidence or contraband. Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA 1978). Seizure also has been defined as the taking of possession forcibly, to grasp, to snatch or to put into possession. State v. Dees, 280 So.2d 51 (Fla. 1st DCA 1973). There can be no constitutionally recognized "seizure" in the case at bar as Detective Johnson,[2] after the narcotics dog Dewey alerted on the subject luggage, simply removed those pieces from the baggage carousel and then placed them some 20 feet away amongst other baggage.
*1159 The search and seizure provision of the Florida Constitution generally imposes no higher standard than that of the 4th Amendment to the U.S. Constitution. State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979).
Broadly speaking, a search and seizure under the 4th Amendment covers any official invasion of a person's expectation of privacy as to his person, house, papers or effects. State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979). Specifically what the Florida and the U.S. Constitutions forbid is not all searches and seizures but only unreasonable searches and seizures. However, they do not forbid the application of common sense in the detection of crime and apprehension of criminals. State v. Nittolo, 317 So.2d 748 (Fla. 1975). Just exactly what is reasonable in the 4th Amendment sense always depends on a balance which must be struck between, on the one hand, the level of official intrusion into individual privacy and, on the other hand, the public interest to be served by such intrusion. U.S. v. Himmelwright, 551 F.2d 991 (5th Cir.1977). Therefore, the courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). In reviewing the above criteria, we first considered the justification for use of the narcotics dog. Detective D'Azevedo either observed or had knowledge of some of the following which led him to the conclusion that Mata and Chavarria were drug couriers: 1) after having taken a circuitous route to Miami, they arrived in the late morning with three bags and were scheduled to take a direct return flight to San Francisco later that date, 2) all transactions were paid for in cash, 3) all calls at the hotel were made from the lobby pay phone and not their room, 4) a false call-back telephone number had been given to the airlines, and 5) they obviously were wary of being followed in their car when they were picked up by a third party at the hotel and were driving in such a fashion so as to detect surveillance.
At the very least, the police had a founded suspicion that Chavarria and Mata were engaged in criminal activity and were justified in obtaining a narcotics dog. The dogs never react positively to baggage which does not contain narcotics such that if an innocent person's suitcase were "sniffed" the handler would learn only that illicit drugs were not present and there would be no annoyance, inconvenience or humiliation connected with the surveillance. The invasion of privacy is not aimed at the person but rather his luggage. Thus, the scope of the intrusion is minimal, restrictive and tolerable by society. See U.S. v. Bronstein, 521 F.2d 459 (2d Cir.1975); U.S. v. Solis, 536 F.2d 880 (9th Cir.1976). The canine surveillance itself was conducted in the baggage area of a public airline terminal out of the view of the general public and was, therefore, permissible. See U.S. v. Bronstein, supra.
The use of the dog, Dewey, trained to detect cocaine, was reasonable under the facts of the instant case and, therefore, not violative of the search and seizure provisions of the state or federal constitutions. Compare State v. Elkins, 47 Ohio App.2d 307, 354 N.E.2d 716 (1976).
Affirmed.
NOTES
[1] We therefore do not reach the issue of the necessity of obtaining a warrant before the police could search the bags.
[2] There is no question that Detective Johnson had a right to be in the baggage area as the entire airport is owned by Metropolitan Dade County.