381 So.2d 1180 (1980)
The STATE of Florida, Appellant,
v.
Joseph Jay GOODLEY, Appellee.
No. 79-985.
District Court of Appeal of Florida, Third District.
March 18, 1980.
Rehearing Denied April 18, 1980.
*1181 Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., for appellant.
McGill, Dulmer & Tracy and Robert Jackson Magill, Venice, for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
SCHWARTZ, Judge.
The state appeals from an order suppressing a half-pound of cocaine which was discovered and seized after police officers, armed with a search warrant, opened the defendant's suitcase at the Miami International Airport. The basis of the ruling below was the conclusion that the information which constituted probable cause to believe that the bag contained contraband  primarily the result of the "sniffing" of a trained police dog  had been unconstitutionally secured. We disagree and reverse.
The facts are clear, simple, and, since only the police officers testified at the motion to suppress, entirely undisputed. On January 22, 1979, three Dade County officers assigned to the airport narcotics unit observed Goodley standing in line at the National Airlines ticket counter on the second-floor concourse. Their suspicion was aroused by his visible reactions to their presence and to the "narcotics" dog, Le Dur, which accompanied them. After he checked a piece of luggage with a name tag reading "Mr. Martin Joyce," it was agreed that two of the officers, Facchiano and D'Azevedo, would have Le Dur sniff the bag in the downstairs baggage area, while the third, McGee, continued to watch the defendant. When Facchiano and D'Azevedo arrived at the baggage area, they secured the permission of the National supervisor to have the dog "examine" Goodley's bag. His suitcase, along with four or five others, was moved "about a foot" from a baggage cart onto the floor directly below it. Le Dur then proceeded to "sniff" the outside of the bags; he reacted immediately and positively only to Goodley's. At once, the bag was set aside, the defendant was brought from the concourse to the baggage area, and the officers repaired to a magistrate. Based upon an affidavit which recited these facts, together with an account of the past and established expertise of Le Dur in the olfactory discovery of narcotics and which noted also the false identification placed on Goodley's suitcase, a circuit court judge issued a search warrant.[1] The result of its execution reconfirmed, as we have seen, the accuracy of Le Dur's nose.
*1182 The trial judge granted the motion to suppress on the stated grounds that "there was a lack of probable cause to seize the Defendant's luggage [and] the action of the officers in removing the defendant's luggage from the other general baggage to conduct the test constituted an unreasonable seizure." Our reversal is necessarily based upon the determination that the officers and their dog did not intrude in any way upon Goodley's "legitimate expectations of privacy," and thus did not violate any right or interest protected by the constitution. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Indeed, as applied to each of the two police actions challenged in this case  the replacement of the defendant's bag to facilitate the sniff, and the sniff itself  this conclusion seems no less than self-evident.
1. It is obvious that a traveler who checks his luggage has no knowledge and, in fact, no real concern as to precisely where his bag may be located within the airline's custody at any given time. It follows that the slight movement of Goodley's unopened bag from the cart to the floor  concerning which the term "de minimus" is a generous characterization  did not, even remotely, amount to a fourth amendment seizure, much less a "search" of the defendant, see State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979), so as to require the prior existence of probable cause. United States v. Novello, 519 F.2d 1078 (5th Cir.1975); United States v. Fulero, 162 U.S.App.D.C. 206, 498 F.2d 748 (D.C. Cir.1974); cf. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); see generally Moylan, "The Threshold Question of the Application of the Fourth Amendment or the Doctrine of `So What?,'" 80 So.Ill.L.J. 118 (1975).
2. The same conclusion applies to the action of Le Dur's nose. One's legitimate privacy interest in his personal luggage concerns its contents, not its exterior. See United States v. Chadwick, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550, n. 8 (1977). Furthermore, by committing his bag to the custody of National Airlines, Goodley knowingly exposed that exterior to the public, including those whom National permitted to approach it. See United States v. Race, 529 F.2d 12 (1st Cir.1976); United States v. Novello, supra; State v. Wolohan, 23 Wash. App. 813, 598 P.2d 421 (1979). The defendant could therefore have no constitutionally cognizable right to the inviolability of the aromatic molecules which surrounded his luggage as it stood on the floor of the National baggage area. Consequently, he has no constitutional complaint that Le Dur's nostrils intruded into that airspace. In so holding, we follow the overwhelming weight of authority to the effect that a dog's sniff is not a fourth amendment search.[2] E.g., United States v. Venema, 563 F.2d 1003 (10th Cir.1977); United States v. Race, supra; United States v. Bronstein, 521 F.2d 459 (2d Cir.1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1975); United States v. Fulero, 162 U.S.App.D.C. 206, 498 F.2d 748 (D.C. Cir.1974) (contrary contention described as "frivolous"); State v. 1969 Volkswagen Bus, 120 Ariz. 365, 586 P.2d 210 (1978); People v. Campbell, 67 Ill.2d 308, 10 Ill.Dec. 340, 367 N.E.2d 949 (1977); State v. Wolohan, supra.[3]
*1183 For these reasons, we hold, as another panel of this court recently did in Mata v. State, 380 So.2d 1157 (Fla. 3d DCA 1980), that the "probable cause" which admittedly[4] underlay the search warrant was properly obtained. The order of suppression under review is therefore
Reversed.
NOTES
[1] The defendant does not dispute either the showing of Le Dur's abilities nor the existence in the affidavit as a whole of "probable cause" to support the issuance of the warrant. This concession is well-justified. E.g., United States v. Venema, 563 F.2d 1003, 1007 (10th Cir.1977); United States v. Meyer, 536 F.2d 963 (1st Cir.1976); State v. Wolohan, 23 Wash. App. 813, 598 P.2d 421, 425 (1979) and cases cited.
[2] The only extant decisions which have actually invalidated the results of a dog sniff on constitutional grounds are two California cases, People v. Evans, 65 Cal. App.3d 924, 134 Cal. Rptr. 436 (1977) and People v. Williams, 51 Cal. App.3d 346, 124 Cal. Rptr. 253 (1975). See also United States v. Solis, 393 F. Supp. 325 (C.D.Cal. 1975), rev'd, United States v. Solis, 536 F.2d 880 (9th Cir.1976). We find these opinions entirely unconvincing.
[3] Alternatively, assuming arguendo that a fourth amendment "search" of some kind is involved in a dog sniff, we hold that the one in this case was, under all the circumstances, reasonably undertaken. It is a recognized principle that, as the seriousness and degree of governmental activity declines, so do the indicia of criminal activity constitutionally required to sustain it. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); State v. Williams, 371 So.2d 1074 (Fla. 3d DCA 1979). Hence, while the bare suspicion engendered by Goodley's furtive actions on the concourse was plainly insufficient to justify any more serious police action, see State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979), it was enough to support the trivial intrusion represented by Le Dur's nasal activity in the vicinity of the defendant's bag. See United States v. Solis, 536 F.2d 880 (9th Cir.1976); State v. Elkins, 47 Ohio App.2d 307, 354 N.E.2d 716 (1976). At the least, Le Dur's sniff, directed as it was only against Goodley's bag, was surely not part of a general, exploratory search of the type which, while actually approved by the majority in the Wolohan case, supra, was the source of so much justified concern to the dissenter. See also United States v. Venema, supra; United States v. Meyer, 536 F.2d 963 (1st Cir.1976); State v. Quatsling, 24 Ariz. App. 105, 536 P.2d 226 (1975), cert. denied, 424 U.S. 945, 96 S.Ct. 1416, 47 L.Ed.2d 352 (1975).
[4] See note 1, supra.