390 So.2d 401 (1980)
Jeffrey Collins SIZEMORE, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-940.
District Court of Appeal of Florida, Third District.
November 4, 1980.
Rehearing Denied December 12, 1980.
*402 Rex Ryland, Jr., Coconut Grove, for appellant.
Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HUBBART, C.J., and NESBITT and DANIEL S. PEARSON,[*] JJ.
NESBITT, Judge.
The issue presented on appeal is whether the consent given by Sizemore, defendant below, which allowed police officers to have a trained narcotics dog sniff his briefcase, was valid and therefore established the probable cause necessary to obtain a warrant to search the briefcase. We hold that the trial court properly refused to suppress the evidence upon its finding that the defendant did validly consent and affirm the conviction.
After a non-jury trial, the defendant was convicted of: (1) possession of cocaine with intent to sell; and (2) unlawful possession of marijuana. He was adjudicated guilty and given a split sentence of two years in the state penitentiary followed by five years probation. The defendant contends that the trial court improperly refused to suppress the tangible evidence which was admitted over his objection. At the suppression hearing which preceded the trial, only police officers testified. The evidence, therefore, is essentially uncontradicted and unrefuted and must be construed in a light most favorable to the state.
The record reveals that Sizemore was first observed by Detectives McGavock and Wolfe in the main lobby of the Miami International Airport at approximately 10:15 A.M. on January 2, 1979. The detectives were seated across from the National Airlines ticket counter when they observed the defendant who was dressed in a suit, wore hiking boots, and was carrying a grey American Tourister briefcase. The defendant talked with a Continental Airlines ticket agent and then proceeded past the National counter to the Southern Airways and Braniff ticket counters to get a flight to Denver, Colorado. In the interim, Detective Wolfe learned from the Continental agent that Sizemore held a ticket for an earlier Continental flight to Denver but had missed it. Wolfe also learned from another ticket agent that the defendant had no luggage other than the briefcase he carried. Ultimately, Sizemore went to the departure area of Concourse G where, in doing so, he went through and cleared an FAA checkpoint. The detectives considered it unusual that the defendant went to his departure area before noon to await a 3:00 P.M. flight to Denver.
It was there the detectives first approached the defendant. When they did, they displayed their badges and advised the defendant that they were police officers searching for narcotics. The officers did not tell the defendant that he was under arrest nor did they physically touch him. They were polite and courteous while they engaged him in conversation. The defendant appeared to be mentally and physically alert and was cooperative.
The detectives asked Sizemore for identification. He showed them his Florida driver's license and a one-way ticket to Denver, both of which correctly identified him and were promptly returned. When Sizemore was asked why he wore such light-weight clothing (a suit without a topcoat) at that *403 season of the year with Denver as his intended destination, he replied that he was wearing thermal underwear.
Detective McGavock asked the defendant if he might look inside his briefcase. The defendant questioned whether he had to let them look, to which McGavock replied that he did not. The defendant then told them that he did not want them to do so. Detective Wolfe then asked the defendant if he had any objection to having a narcotics dog sniff his briefcase. Sizemore stated that he had no objections but once again indicated he did not want his briefcase opened. He told the detectives that there was "nothing" in it.
Sizemore's primary concern was about missing his flight. The detectives told him it would take about thirty minutes for the trained narcotics dog and its handler to arrive at the airport and suggested it would be more convenient for all concerned to go to the baggage receiving portion of the airport. The detectives further explained to the defendant how a baggage sniff lineup is conducted when a trained narcotics dog is used. The detectives and the defendant went into a concession shop to drink orange juice where they made small talk while waiting for the dog and its handler to arrive. During this time, the defendant had custody of his briefcase. At approximately 11:15 A.M., the narcotics dog and its handler arrived. The defendant and the two detectives had already moved downstairs to the baggage claim area.
On arrival at the baggage claim area, one of the detectives took Sizemore's briefcase from him and placed it with the other bags to form a baggage sniff lineup. At that point, Detective McGavock specifically asked the defendant if it was all right for the narcotics dog to sniff his briefcase. Again, the defendant stated he had no objection to the sniff of his briefcase but wanted to make sure that they "just don't open it." He reiterated the dog would not find anything. The defendant watched the baggage sniff lineup and the ensuing sniff without objection.
Prior to his arrest, the detectives never advised Sizemore of his constitutional rights (other than his right to refuse a search of his briefcase), nor did they advise him that he was free to leave. At no time did Sizemore inform the officers that he desired to go on his way.
When the narcotics dog was presented to the baggage sniff lineup, it reacted in a manner consistent with its training indicating the presence of contraband in the defendant's briefcase. Sizemore was then taken into custody and given his Miranda warnings after which the detectives obtained a search warrant for the briefcase.
The defendant does not contend on appeal, nor did he contend in the trial court, that the dog sniff did not constitute probable cause for the issuance of the search warrant which ultimately led to the seizure of more than one-half pound of cocaine and five grams of marijuana from his briefcase.
At the conclusion of the suppression hearing, the trial court found that the defendant:
1... . was not "detained" by Officers McGavock and Wolfe, nor forced to stay in their presence, nor made to feel uncomfortable by their presence, but was in fact free to leave should he have chosen to do so.
2... . knew he did not have to give consent to a search, nor give consent to allow a police dog to sniff or otherwise evaluate his luggage.
3... . was not coerced nor tricked by the police officers into giving his consent for the police dog to sniff his luggage.
4... . was not pressured by time or any of those factors which would have forced him to consent to something simply to get it over with.
Relying upon United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the defendant stoutly maintains his right to a reasonable expectation of privacy, as to the contents of his briefcase, was violated. He argues that this is especially so in view of his refusal to permit officers to search his briefcase and by limiting and conditioning his consent solely to a canine *404 sniff "inspection" of his briefcase. Sizemore directs our attention to Villari v. State, 372 So.2d 522 (Fla. 1st DCA 1979) to show that, under the factual pattern presented, his consent to the canine sniff was not given. We fine that there is a marked distinction between the present case and that of Villari in which the defendant's consent was deemed withdrawn when he questioned the officer's authority to further search without a warrant. Here, Sizemore never questioned or remonstrated against the canine inspection of his briefcase.
The state, relying on State v. Goodley, 381 So.2d 1180 (Fla. 3d DCA 1980) and Mata v. State, 380 So.2d 1157 (Fla. 3d DCA 1980), counters with the argument that there was no Fourth Amendment intrusion upon the defendant's rights because the olfactory inspection by the trained narcotics dog occurred in a public lobby. We do not consider those cases, relied upon by the state, applicable to the present case because Sizemore remained in possession of his briefcase and thereby maintained his right of privacy as to its contents until just prior to the time the briefcase was presented for the dog sniff. It was only then that the officers actually took the briefcase from the defendant's personal custody. Without the defendant's valid consent, it would have been practically impossible for the briefcase to have been presented to the trained narcotics dog for an olfactory inspection. Consequently, the resolution of the question of an invasion of the defendant's Fourth Amendment right to privacy in this case is governed by his valid consent to the dog sniff.
Sizemore further contends that consent was presumptively tainted because he had been "seized" or "detained" within the meaning of the Fourth Amendment prior to tendering his consent and consequently the alleged consent was only the product of his acquiescence to a display of lawful authority. We find it unnecessary, in this case, to specifically determine whether the defendant was "seized" or "detained" because, assuming that he was, it is clear that any taint arising from an unlawful police action was clearly dissipated by clear and convincing proof of an unequivocal break in the chain of illegality. Taylor v. State, 355 So.2d 180 (Fla. 3d DCA), cert. denied, 361 So.2d 835 (Fla. 1978). In addition, viewing the totality of the circumstances, we find the defendant's consent to the canine sniff was freely and voluntarily given. In that regard, this case, in many respects, is stronger than the parallel situation presented in United States v. Mendenhall, 446 U.S. 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
In Mendenhall, a young black woman, who had been told she had a right to decline a search, accompanied a drug enforcement administration (DEA) agent to a DEA office where she agreed to disrobe and submit to a strip search. Under the consent theory, a majority of the United States Supreme Court held that the defendant had freely and voluntarily submitted to the search. Applying this approach, it is apparent that the state, in this case, discharged its burden by clear and convincing evidence to show that Sizemore freely and voluntarily consented to the canine sniff of his briefcase. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Norman v. State, 379 So.2d 643 (Fla. 1980).
Sizemore, much like the defendant in Mendenhall, constitutionally did not have to be advised of his right to refuse to consent in order to make the search or sniff a valid one. Schneckloth v. Bustamonte, supra; Taylor v. State, supra, 355 So.2d at 185. However, the defendant's knowledge regarding his right to refuse the police search of his briefcase was a relevant factor to be considered by the court in determining the voluntariness of the consent. Husted v. State, 370 So.2d 853 (Fla. 3d DCA 1979).
The pivotal factor in this case was that Sizemore had a thirty-minute interval, while awaiting the arrival of the dog and its handler, to reflect upon his impending plight. The police officers accorded him the right to refuse a direct search of his briefcase and he had a reasonable expectancy that they would accord him the same freedom against a canine sniff. The detectives *405 repeatedly asked Sizemore if he had any objections to having the dog sniff his briefcase and each time he indicated that he did not. The defendant should have been under no illusions. He knew he was dealing with narcotics officers and the marvelous olfactory powers of their trained narcotics canine. Although his consent was specifically and conditionally given only to the canine sniff, the time interval, his knowledge about the police purpose, and the repeated warnings were sufficient to break any presumptive taint which may have arisen.
Under these facts and viewing the totality of the circumstances, we find that the state met its burden, by clear and convincing evidence, to show that any taint resulting from the presumptive illegality was dissipated. United States v. Mendenhall, supra; Schneckloth v. Bustamonte, supra; Norman v. State, supra; Bailey v. State, 319 So.2d 22 (Fla. 1975). The defendant's consent to the canine sniff was valid and the trial court properly refused to suppress the evidence obtained as a result of it. The defendant's conviction is affirmed.
NOTES
[*] Judge Pearson participated in the decision in this case but did not hear oral argument.