392 So.2d 602 (1981)
The STATE of Florida, Appellant,
v.
Guy Emery MOSIER, Appellee.
No. 79-1644.
District Court of Appeal of Florida, Third District.
January 20, 1981.
*603 Janet Reno, State Atty. and Ira N. Loewy, Asst. State Atty., for appellant.
Roy E. Black and Frank C. Furei, Miami, for appellee.
*604 Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
The state appeals[1] a trial court suppression order regarding a quantity of cocaine discovered in the course of an airport narcotics investigation. We remand for further evidentiary hearing.
While proceeding to his departure gate, Guy Mosier was approached by police plainclothes detectives Facchiano and McGee, of the airport narcotics detail. Mosier produced the requested personal identification, and allowed them to examine his flight ticket and baggage claim check (which were returned shortly thereafter). However, he refused their request for permission to search a suitcase checked earlier at the Continental ticket counter. Thereupon, the three parted ways: Mosier to his plane, Facchiano to the Continental baggage loading area to locate the suitcase in question, and McGee to a telephone, by which he solicited the aid of Agent DiDecker, and his dog, Dewey, of the United States Customs Service.
Once in the loading area, Facchiano removed Mosier's suitcase from the cart upon which it had been placed in the routine of Continental's loading procedure, and arranged it and several other bags in a row, on the ground, for Dewey's discerning perusal. At that juncture, Mosier waited for the plane to take off, and the two detectives waited for Dewey (and Agent DiDecker).
Dewey arrived in the nick of time, "alerting" on Mosier's suitcase (thereby indicating the presence of drugs) at 9:55 A.M.  precisely the minute of Mosier's scheduled departure. Leaving Agent DiDecker (and Dewey) to guard the suitcase, Facchiano and McGee boarded Mosier's plane, and effected his arrest. The suitcase was subsequently opened under authority of a validly issued search warrant, and two kilos of cocaine were seized.
At the conclusion of the suppression hearing, the trial court held that the initial verbal encounter between Mosier and the detectives constituted a Terry "stop,"[2] not based on an articulable suspicion satisfying Terry or the statutory requirement.[3] The court held that the illegal stop tainted the validity of the warrant and search; additionally, it held that the trespass of Facchiano, McGee, DiDecker (and Dewey) into the Continental baggage area, without "evidence even remotely pointing towards the commission of a crime," tainted the acquisition of evidence obtained thereafter. On those multiple grounds, the motion to suppress was granted.
We remand because the legality vel non of the concourse encounter is irrelevant to a determination of whether Mosier's bag was validly seized, as is the issue of the detectives' putative trespass into the baggage loading area.
Detective Facchiano testified that he distinguished Mosier's bag from others on the baggage cart on the basis of its visual characteristics, initially perceived while Mosier and his bag were being surveilled in the concourse. Only by way of verification did Facchiano compare the claim check number on the bag with that earlier observed stapled to Mosier's ticket. Given those facts, whether Mosier was previously "stopped" or not, legally or illegally, is of no consequence; the taint, if any, was purged through operation of the doctrine of independent source: Evidence legally discovered is admissible on the theory that it was discovered by independent legal means, rather than through exploitation of a prior illegality. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); United States v. Vicknair, 610 F.2d 372, 381 (5th Cir.1980), cert. denied, ___ U.S. ___, 101 S.Ct. 83, 66 L.Ed.2d 25 (1980); United States v. Pike, 523 F.2d 734 (5th Cir.), cert. denied, 426 U.S. 906, *605 96 S.Ct. 2226, 48 L.Ed.2d 830 (1975).[4]
We turn to the officer's presence in the Continental baggage loading area, assuming it to be unprivileged, and its impact upon the admissibility of subsequently seized evidence: Mosier cannot claim a "reasonable expectation of privacy" in those premises, and thus, he cannot be said to have suffered a Fourth Amendment intrusion by the detectives' entry into the area. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
Certainly, a reasonable expectation of privacy existed as to the contents of the suitcase, United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1972), but it is clear that a dog sniff is not a Fourth Amendment "search." United States v. Solis, 536 F.2d 880 (9th Cir.1976); United States v. Bronstein, 521 F.2d 459 (2nd Cir.1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); United States v. Fulero, 162 U.S.App.D.C. 206, 498 F.2d 748 (D.C. Cir.1974); State v. Goodley, 381 So.2d 1180 (Fla. 3d DCA 1980); Mata v. State, 380 So.2d 1157 (Fla. 3d DCA 1980). Moreover, movement of the suitcase from the baggage cart to the floor, to facilitate the sniff, was a de minimis intrusion certainly not amounting to a seizure. Goodley, Mata, supra.
However, we cannot say with finality, on the record before us, whether Mosier's suitcase was seized without probable cause. We noted initially that Dewey's "alert" on the suitcase conferred probable cause for seizure of the bag at the precise minute of its scheduled departure. If the bag was delayed for any reason other than state action, the detectives (and the state) were the beneficiaries of fortune. If, however, in the absence of state action the bag would have become inaccessible to Dewey for the purpose of his sniff, then it was unlawfully seized. Since the state concedes, as it must, that Facchiano and McGee acted without probable cause of criminal activity until Dewey provided it, such prior seizure would inevitably taint the evidence thereafter obtained.
We vacate the order appealed and remand for an evidentiary determination of whether or not the suitcase was effectively detained because of state action pertaining to the officer's investigation. If so, then the motion to suppress should be granted; if the suitcase was not seized prior to Dewey's sniff, then the motion should be denied.
It is so ordered.
NOTES
[1] Fla.R.App.P. 9.140(c)(1)(B).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] See § 901.151, Fla. Stat. (1979).
[4] We pause long enough to note, and dismiss, Mosier's claim that his bag was sought out only because he stood on his right not to consent to a search, i.e. that the officers suspected him on the supposition that innocent people do not object to luggage searches. It is clear that the officers suspected him before their approach  indeed, that was why they approached him  and their request for consent to search was merely an attempt to obviate the necessity of summoning Agent DiDecker and Dewey. When their request was refused, they fell back upon their less preferable alternative. They called for the dog. We find their action totally appropriate in that regard.