393 So.2d 1136 (1981)
The STATE of Florida, Appellant,
v.
Rodolfo Osvaldo RICANO, Appellee.
No. 80-618.
District Court of Appeal of Florida, Third District.
January 27, 1981.
Rehearing Denied March 4, 1981.
Janet Reno, State Atty. and Theda R. James, Asst. State Atty., for appellant.
Robert F. Garcia-Esquerro and Miguel Del Aguila, Samek & Besser and Jeffrey W. Samek, Miami, for appellee.
Before SCHWARTZ, NESBITT and PEARSON, JJ.
*1137 NESBITT, Judge.
The state appeals from an order granting the defendant's motion to suppress physical evidence which formed the basis for an information charging him with: (1) trafficking in cocaine; and (2) unlawful possession of cocaine with intent to sell. Finding error in the challenged order, we reverse.
Detectives McGavock and Facchiano of the Narcotics Detail of the Public Safety Department were assigned to the Miami International Airport. At approximately 8:00 a.m. on August 10, 1979, McGavock observed the defendant arrive at the airport in an automobile driven by a companion. After the car was parked, the two exited the car and went to its trunk area. After apparently making some counter-surveillance, the driver opened the trunk and withdrew two pieces of luggage which he handed to the defendant. The defendant subsequently checked the larger of the two pieces of luggage with the terminal porter, received a claim stub, and then entered the lobby of the main concourse. Detective McGavock observed this transaction and made a written notation of the description of the checked bag as well as its claim check stub number. McGavock, continuing surveillance, observed the defendant approach the National Airlines ticket counter and then move toward the departure concourse. The defendant apparently became aware of the police surveillance and attempted evasive action. This caused the detectives to approach him. Detective Facchiano asked the defendant for identification and the defendant promptly produced his airline ticket and an Alaska driver's license. After a brief examination, both items were promptly returned to him. Facchiano then advised the defendant that he and McGavock were narcotics officers assigned to deter the smuggling of narcotics via commercial airlines. McGavock asked the defendant if he had any other luggage. The defendant held up a tote bag and replied, "No, this is it." He then opened the tote bag and invited the officers to inspect it saying: "Do you want to look inside? You can look." McGavock then took Facchiano aside and told him that he was going downstairs to the baggage area where defendant's other piece of baggage, which he observed being checked at curbside, would be. McGavock departed. Facchiano, in the company of Sgt. Pearson, who had later joined them, looked through the defendant's tote bag. The cursory examination revealed nothing in the nature of contraband. Facchiano again asked the defendant if he had any other baggage and he once again replied that he did not. The defendant was then permitted to proceed on his way. Facchiano followed the defendant until he actually stepped onto the escalator to board his flight.
In the meantime, Detective McGavock had contacted Detective D'Azevedo, who was the handler of the narcotics dog, Ringo. McGavock went to the airport baggage check area where the defendant's luggage was moved from the cart to the airport floor and arranged a canine baggage sniff lineup. When presented to the baggage lineup, Ringo alerted on the bag which corresponded both to the description and claim check number McGavock had noted prior to any contact with the defendant. Facchiano and McGavock then went to the concourse where they found the defendant waiting in line for the departure of his flight. The defendant was arrested and returned to the baggage loading area. The officers presented the bag, identified by Ringo, to the defendant whereupon the defendant denied ownership. [At the suppression hearing, McGavock not only identified the bag by description but also by the claim check stub number as that which he saw the defendant check.] The officers then obtained a search warrant for the piece of luggage which led to the disclosure of the cocaine in the bag.
In suppressing physical evidence revealed by the search warrant, the trial court improvidently interdicted police action by erroneously determining that the defendant had been stopped or seized. The situation presented in this case does not require this court to determine whether the encounter between the defendant and the *1138 detectives constituted a "stop" or a "mere contact." Prior to the defendant's encounter, the detectives could identify the defendant, his luggage, the flight he was taking, and where his luggage could be located. The encounter with the defendant provided the detectives with no information which was not previously known to them. Viewing the airline ticket and the driver's license only served to confirm what they already knew. Where the facts obtained merely act as a confirmation of previous knowledge, there is no need for suppression. United States v. Vicknair, 610 F.2d 372 (5th Cir.), cert. denied, ___ U.S. ___, 101 S.Ct. 83, 66 L.Ed.2d 25 (1980); United States v. Pike, 523 F.2d 734 (5th Cir.), cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1975). As stated in this case, police officers were armed with the description of the defendant's luggage, its claim check stub number, and the airline on which it had been checked and where it might be located. With that information legally obtained, the detectives were plainly authorized by our decision in State v. Goodley, 381 So.2d 1180 (Fla. 3d DCA 1980) to move the defendant's baggage from a cart to the airport floor and present it to the trained narcotics dog for his inspection. State v. Goodley, supra, controls that aspect of the decision at bar and no further elaboration of the law expressed therein is necessary. See also, Mata v. State, 380 So.2d 1157 (Fla. 3d DCA 1980).
For the foregoing reasons, the order granting the defendant's motion to suppress is reversed and the cause remanded for further proceedings.