435 So.2d 269 (1983)
The STATE of Florida, Appellant,
v.
Gerald BANKSTON, Appellee.
No. 82-2198.
District Court of Appeal of Florida, Third District.
June 7, 1983.
Rehearing Denied August 15, 1983.
Jim Smith, Atty. Gen., and William Thomas, Asst. Atty. Gen., for appellant.
Ginsburg, Nagin, Rosin & Ginsburg and Stephen Rosin, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and NESBITT, JJ.
SCHWARTZ, Chief Judge.
In our first review of a Miami International Airport narcotics stop and search since the United States Supreme Court decision in Florida v. Royer, ___ U.S. ___, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), affirming, Royer v. State, 389 So.2d 1007 (Fla. 3d DCA 1980) (en banc), rev. denied, 397 So.2d 779 (Fla. 1981), we reverse an order of suppression on the authority of that decision.
This particular variation of the generally familiar theme began[1] when two plainclothes narcotics officers, Johnson and Dozier, became interested in Bankston and his companion, Peterson, because they appeared "extremely nervous"[2] in the airport. *270 When they "approached" the appellee, see Florida v. Royer, supra, ___ U.S. at ___, 103 S.Ct. at 1322, 75 L.Ed.2d at 236; Login v. State, 394 So.2d 183 (Fla. 3d DCA 1981), as he was nearing his departure gate, and asked for his ticket and identification, Bankston voluntarily complied. The names on the two documents did not match. Johnson then asked permission to look inside a suitbag he was carrying. When the defendant asked him what he was after, Johnson stated that he and his partner were narcotics officers, looking for drugs. Bankston at once became faint and asked to sit down. After he was taken to a nearby seating area, the defendant then asked "if I have something, why don't you let me flush it in the john?," to which Johnson responded that if all he had was a "head stash, that we would indeed likely allow" him to do so. At that point, Bankston was informed that he was "being detained."
He and Peterson were again asked to consent to a search of their checked and carry-on baggage. Although Peterson agreed, Bankston did not, and Johnson, as he had indicated, went to secure a narcotics dog from its pen on the apron of the airport. When the dog arrived some five-fifteen minutes later, he alerted on the suit bag which had been moved a foot or two away from Bankston to accommodate the sniff. Based on the probable cause which had thus arisen, Florida v. Royer, ___ U.S. at ___, 103 S.Ct. at 1325, 75 L.Ed.2d at 242; Cavalluzzi v. State, 409 So.2d 1108 (Fla. 3d DCA 1982), the defendant was arrested and a search warrant was secured for the bag. When it was executed, 185 grams of cocaine were found inside. Bankston's resulting prosecution for trafficking, however, was short-circuited by the order under review, in which the trial judge granted a motion to suppress on the authority of Sizemore v. State, 390 So.2d 401 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981).[3] In the newly generated light of Florida v. Royer, this ruling cannot stand.
We reach this conclusion by the following line of legal analysis:
1. Even putting aside the dubious effect of the observed nervousness, see Royer v. State, 389 So.2d at 1016, n. 4; but see Florida v. Royer, ___ U.S. at ___, n. 5, 103 S.Ct. at 1338, n. 5, 75 L.Ed.2d at 254, n. 5 (Rehnquist, J. dissenting), it is clear that Bankston's fainting spell, his dual identification and especially his markedly incriminating statement about flushing "something" down the john[4] were together more than sufficient to engender the founded suspicion of criminal conduct which was required to justify his detention. As stated in the plurality opinion in Royer[5]
We agree with the State that when the officers discovered that Royer was traveling under an assumed name, this fact, and the facts already known to the officers  paying cash for a one-way ticket, the mode of checking the two bags, and Royer's appearance and conduct in general  were adequate grounds for suspecting Royer of carrying drugs and for temporarily detaining him and his luggage while they attempted to verify or dispel their suspicions in a manner that did not exceed the limits of an investigative detention. [e.s.]
*271 ___ U.S. at ___, 103 S.Ct. at 1326, 75 L.Ed.2d at 239. See also Harpold v. State, 389 So.2d 279 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 777 (Fla. 1981); Myles v. State, 374 So.2d 83 (Fla. 3d DCA 1979); compare Horvitz v. State, 433 So.2d 545 (Fla. 4th DCA 1983).
2. Having thus properly restrained the defendant, the police then, with astonishing foresight, did just what the Supreme Court later stated they were justified and entitled to do: they held Bankston while awaiting the arrival of a narcotics dog. As the plurality noted
The courts are not strangers to the use of trained dogs to detect the presence of controlled substances in luggage. There is no indication here that this means was not feasible and available. If it had been used, Royer and his luggage could have been momentarily detained while this investigative procedure was carried out.
___ U.S. at ___-___, 103 S.Ct. at 1327, 75 L.Ed.2d at 241-42.
In any event, we hold here that the officers had reasonable suspicion to believe that Royer's luggage contained drugs, and we assume that the use of dogs in the investigation would not have entailed any prolonged detention of either Royer or his luggage which may involve other Fourth Amendment concerns.
* * * * * *
In the case before us, the officers, with founded suspicion, could have detained Royer for the brief period[6] during which Florida authorities at busy airports seem able to carry out the dog-sniffing procedure.[7]
___ U.S. at ___, n. 10, 103 S.Ct. at 1328, n. 10, 75 L.Ed.2d at 242, n. 10; compare, Horvitz v. State, supra.
The defendant has suggested that taking the carry-on bag from Bankston's immediate possession so that the sniff could take place was improper. It is apparent, however, that, since both he and his hand-luggage had already been properly seized, the precise location of either during the period of lawful detention is constitutionally insignificant. Cavalluzzi v. State, supra; see State v. Roberts, 415 So.2d 796 (Fla. 3d DCA 1982); State v. Goodley, 381 So.2d 1180 (Fla. 3d DCA 1980).
Because the conduct of the officers in effecting and conducting the search and seizure of the defendant was in accordance with the extended form of Terry stop approved in Royer, the order of suppression is
Reversed.
NOTES
[1] The facts stated are those in the uncontradicted testimony of Sgt. Johnson. See State v. Mitchell, 377 So.2d 1006 (Fla. 3d DCA 1979).
[2] No other characteristic of the drug courier profile was noted or relied upon. Both for this reason and because founded suspicion was based upon other non-profile indicia, we do not here reexamine our dictum in Royer, 389 So.2d at 1017, n. 6 that "a conformance, without more [e.o.], to one or more elements of the profile does not amount to articulable suspicion." We do note that the majority of the Supreme Court seems not to have reached or directly addressed that question in Florida v. Royer. But see ___ U.S. at ___ n. 6, 103 S.Ct. at 1339, n. 6, 75 L.Ed.2d at 254, n. 6 (Rehnquist, J. dissenting).
[3] In Sizemore, we upheld a dog-sniff of the defendant's hand luggage because, unlike the situation here, the defendant had voluntarily consented to the sniff after being advised of his right to refuse. The pertinence of Sizemore, even pre-Florida v. Royer, is dubious, however, both because (a) none of the circumstances which established founded suspicion in this case were present there and (b) the court specifically found it unnecessary to decide whether Sizemore had even been seized or detained when the consent was given. 390 So.2d at 404.
[4] Indeed, although we do not so decide, the statement may have been enough to create probable cause.
[5] On this issue, only Justice Brennan is arguably in disagreement. Florida v. Royer, ___ U.S. at ___-___, 103 S.Ct. at 1331, 75 L.Ed.2d at 244-45 (Brennan, J., concurring).
[6] The five-fifteen minute time span involved here obviously did not exceed that authorized, in fact actually described, in Florida v. Royer. The question of how long the period of detention may extend and thus whether our holdings in Young v. State, 394 So.2d 525 (Fla. 3d DCA 1981) and State v. Mosier, 392 So.2d 602 (Fla. 3d DCA 1981) may be in jeopardy are therefore not before us. The issue is, however, now generally before the Court in United States v. Place, 660 F.2d 44 (2d Cir.1981), cert. granted, 457 U.S. 1104, 102 S.Ct. 2901, 73 L.Ed.2d 1312 (1982) (invalidating two hour detention of personal luggage to arrange dog sniff).
[7] See note 5, supra.